305 So.2d 611 (1974)
John Wesley GLENN, Plaintiff-Appellant,
v.
Dr. Marc L. KERLIN, III, et al., Defendants-Appellees.
No. 12460.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1974.
Rehearing Denied, January 21, 1975.
*612 Hal V. Lyons, Shreveport, for plaintiff-appellant.
Mayer, Smith & Roberts by Charles L. Mayer, Shreveport, for defendants-appellees.
Before AYRES, PRICE and HALL, JJ.
En Banc. Rehearing Denied, January 21, 1975.
PRICE, Judge.
Plaintiff, John Wesley Glenn, was hospitalized in Willis-Knighton Hospital for surgery from June 10, 1970, during which time he was under the care of Drs. Marc L. Kerlin, III, and H. M. Yearwood.
Plaintiff filed this action against Drs. Kerlin and Yearwood and their liability insurer, St. Paul Fire & Marine Insurance Company. He filed a separate action against Willis-Knighton and its insurer, Insurance Company of North America. He alleges he is entitled to damages from the two physicians because of their failure to provide adequate post operative care and failure to give proper supervision, thereby allowing the development of decubitus ulcers, ultimately resulting in the amputation of his right leg at the hip. In the second action he alleges Willis-Knighton is liable because it was negligent in not rendering proper nursing care which allowed the development and progression of his condition.
As these suits arose out of the same circumstances they were consolidated for trial. Plaintiff has perfected an appeal from the judgment rejecting his demands in each suit.
For simplicity of understanding we shall discuss in this opinion the issues and reasons for our decision in the separate action against the hospital and its insurer, which bears Docket No. 12,459 of this court, and is reported at 305 So.2d 615.
At the time of the hospitalization of plaintiff giving rise to this litigation he was 53 years of age and had been a paraplegic since 1964. He first consulted Dr. Kerlin, a urologist, in July, 1967, for evaluation and treatment of urinary problems which resulted from his paralysis. Because of a progressive deterioration of plaintiff's condition he was admitted to Willis-Knighton, on June 10, 1970, for a surgical procedure medically termed "a cystectomy and bilateral cutaneous ureterostomy", described as one of the most complex operations performed in the practice of urology. Plaintiff's bladder was removed and both the right and left ureter were diverted through the peritoneal cavity to the surface of the abdomen to provide an external outlet for the flow of urine from his kidneys. Further complications during the several days following this surgery resulted in the necessity for a second surgical procedure on June 26, 1971, to correct a gangrenous condition of the distal end of the left ureter. The diseased end of this ureter was excised and this ureter was spliced into the right ureter to provide a single outlet at the surface for drainage of urine. Plaintiff's condition improved sufficiently after this operation to allow his discharge from the hospital on July 8th.
*613 Plaintiff alleges and seeks to prove in both of these actions that he developed decubitous ulcers (which we will refer to hereafter as bed sores) prior to leaving the hospital on the following areas of his body: right ankle, outside right foot; top left foot; right buttocks; middle back above buttocks; and left buttocks.
Plaintiff contends Drs. Kerlin and Yearwood were negligent in failing to require proper care in light of his condition, in failing to discover the development of the bed sores sooner, and in failing to prescribe proper treatment after becoming aware of the original symptoms.
It is undisputed that at the time of plaintiff's discharge from the hospital on July 8th, he had symptoms of several bed sores. How extensive the sores had progressed at this time and whether they could have been prevented under the circumstances and nature of plaintiff's illness are the real issues in dispute.
Defendants do not deny that between the time of discharge from Willis-Knighton and August 13, 1970, a period of approximately six weeks, plaintiff developed serious bed sores requiring his admission to Veterans Administration Hospital on August 13, 1970, for treatment. Nor do they deny that he later lost his right leg due to the degeneration of tissue next to the hip bone from one of the sores on his right buttocks.
Defendants contend the minimal sores which were present at the time of his leaving Willis-Knighton were not caused by any lack of care on the part of the hospital or the attending physicians, but were reasonably to be expected under the circumstances surrounding the nature of plaintiff's surgery and gravely ill condition.
There is apparently no disagreement on the law cited and relied on by defendants relating to the required standard of care of physicians and hospitals in treatment of patients. Defendants contend the jurisprudential rule as stated in Meyer v. St. Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781 (1954), and Uter v. Bone and Joint Clinic, 249 La. 851, 192 So.2d 100 (1966), requiring a physician to exercise only reasonable care commensurate with the skill ordinarily employed by members of his profession in the local community absolves Drs. Kerlin and Yearwood of any liability under the proven facts of this case. The same standard of care required of physicians is applicable to the nurses. Favalora v. Aetna Casualty & Surety Co., 144 So.2d 544 (La.App. 1st Cir. 1962). A similar rule exists in regard to the care required of a hospital. Clarke v. Gowen Sanatorium, Inc., 160 So.2d 426 (La.App. 2nd Cir. 1964).
The issues presented are thus primarily factual in nature and involve an evaluation of the voluminous amount of testimony in the record surrounding the care and treatment of plaintiff while in Willis-Knighton.
The trial judge in written reasons for judgment evaluated and summarized the testimony and other evidence in detail and found the evidence insufficient to establish negligence on the part of the physicians or the hospital.
We are of the opinion the findings of fact and conclusions reached by the trial judge are supported by the evidence.
The testimony of Drs. Kerlin and Yearwood shows plaintiff was critically ill following the surgery performed on June 12th. He had a drop in blood pressure, chills and fever. He perspired profusely, making it difficult to keep the bag for collection of urine attached to his skin with adhesive tape. He was being administered fluids intravenously and a Levine tube was inserted through his nostril into the stomach for several days after the operation. There was also a danger the left ureter would pull loose and empty infectious material into the peritioneal cavity which would have resulted in peritonitis and probable death. The operative wound on plaintiff's abdomen was extensive and developed infection causing further concern. Because of these circumstances both Kerlin *614 and Yearwood testified they considered any unnecessary movement of plaintiff an imminent danger to his survival and no decubitus care was prescribed during the period plaintiff was deemed critical.
The evidence shows Dr. Kerlin discovered symptoms of bed sores developing soon after the second surgery and immediately gave orders for treatment and regular rotation of plaintiff's body position to alleviate as much pressure as possible. This was approximately eight days prior to plaintiff's discharge.
Dr. Kerlin further testified the areas were very minimal and that at the time of plaintiff's discharge he gave plaintiff's wife instructions on continued care at home for the sores. As plaintiff had developed sores previously in 1967 when first seen by Dr. Kerlin and they had healed properly after prescribed care, he testified he had no reason to believe they would not do so at this time.
The evidence shows Dr. Kerlin and Dr. Yearwood, who are associated in the practice of urology, possess the necessary qualifications to administer the treatment given plaintiff. The reasons advanced for not prescribing preventive decubitus care appear to be reasonable under the circumstances and in accord with the standard of care others in the community would have followed. Dr. W. L. Geissler, a urologist, and Dr. Bullock, a general surgeon, both Shreveport physicians, testified they had reviewed the hospital records showing plaintiff's condition and that they would have followed the same judgment as used by Drs. Kerlin and Yearwood. They agree with defendant that it was proper to risk the development of bed sores rather than endanger plaintiff's life by ordering complete decubitus care. The evidence describes complete decubitus care as a rotation of a bed patient from back to abdomen at intervals of approximately two hours.
We can readily understand the impossibility of attempting to place plaintiff on his stomach with the Levine tube in his nostril, the attachment for intravenous feeding on his writ, and the urine collection bag attached to the abdomen.
The testimony of plaintiff's medical witness, Dr. Albert W. Thompson, a general practitioner, who declared he would prescribe complete decubitus care regardless of how ill the patient and even if it endangered his life, was not accepted by the trial judge. We also find this opinion contrary to sound logic and reason.
There is no evidence in the record to show there were symptoms of bed sores appearing before June 28th; therefore, plaintiff has failed to prove his allegations that Dr. Kerlin or Dr. Yearwood was negligent in not discovering them sooner.
The record shows they made regular visits with plaintiff during his post-operative period and punctually described the proper treatment after discovery of the first symptoms of sores on or about June 28th. There is no evidence to contradict their testimony the minimal sores appeared to be healing satisfactorily at the time of plaintiff's discharge. Although plaintiff's wife was advised of the willingness of either doctor to make a house call to the residence if plaintiff did not progess satisfactorily at home, no such request was made by Mr. Glenn. Therefore, any progression of the condition from lack of proper treatment after leaving Willis-Knighton would be difficult to attribute to Dr. Kerlin or Dr. Yearwood.
Plaintiff's allegations of negligence against Willis-Knighton fall into three categories:
1. The failure to properly cleanse plaintiff's body and to maintain his bed linen in a dry and unwrinkled condition.
2. The failure to rotate his body position sufficiently and to provide pads or doughnut rolls for prevention of bed sores.
3. The failure of the nursing staff to have discovered the symptoms of development of sores.
*615 To dispel plaintiff's allegations against it, Willis-Knighton presented a substantial number of witnesses who were in attendance to plaintiff while he was a patient in the hospital. We do not deem it necessary to review this testimony in detail. This evidence, if believed, shows plaintiff received the maximum nursing care which could have been expected under the circumstances. The trial judge saw and heard these witnesses and found their testimony credible.
The principal thrust of plaintiff's argument on this appeal is that the trial judge erred in accepting the nursing staff's testimony at face value when the hospital nursing chart or daily log on plaintiff does not contain the corresponding entries to corroborate this testimony. Several of the nurses who testified explained that except for administering medications, all of the attention provided a patient is not necessarily recorded in the nurse's notes on the patient's record. They testified that in the process of changing linen or cleansing plaintiff, he was repositioned to his side from his back and that such a minor procedure would probably not be recorded. We do not find the absence of such detailed entries in the patient record to lessen the credibility of the testimony of the nursing staff.
This testimony taken as a whole shows the nurses moved plaintiff's position as much as his physical condition would permit without endangering his life.
Both Dr. Kerlin and Dr. Yearwood testified to the adequacy of the care given plaintiff by the nursing staff and confirmed that limited movement of plaintiff's body was in accord with their instructions.
There is no evidence on which a conclusion could be reached that the nursing staff should have discovered symptoms of bed sores prior to the date of June 28th, the date of which Dr. Kerlin first noted redness on two areas of plaintiff's buttocks.
In fact the testimony of plaintiff's wife, who was with him each day, admits her first notice of this condition began approximately one week prior to his discharge.
We further find the evidence to show pads and doughnut rulls were supplied by the hospital. The male orderly who attended plaintiff recalled seeing these on the occasions he bathed and cleansed plaintiff.
The only testimony offered by plaintiff in support of this allegation is that of his wife and step-daughter. The testimony of the step-daughter is too uncertain of specific recollection to carry much weight. The record shows the plaintiff's wife made no complaints or requests to the nursing staff in regard to the pads or rolls not being provided at the times they were needed.
We find the evidence to support the trial judge's conclusion that plaintiff has not shown negligence on the part of Willis-Knighton which caused the condition complained of.
For the foregoing reasons the judgment appealed from is affirmed at appellant's cost.