340 So.2d 695 (1977)
Jacquelyn CALDWELL
v.
A. Mark PARKER, M.D., et al.
No. 7758.
Court of Appeal of Louisiana, Fourth Circuit.
December 14, 1976.
Rehearing Denied January 12, 1977.
Writ Refused March 18, 1977.
*696 Edmond R. Eberle, New Orleans, for plaintiff-appellant.
McGlinchey, Stafford, Mintz & Hoffman, C. G. Norwood, Jr., New Orleans, for defendant-appellee, Hotel Dieu Hospital.
Lemle, Kelleher, Kohlmeyer & Matthews, H. Martin Hunley, Jr., John M. Sartin, Jr., New Orleans, for defendants-appellees, Dr. Thomas J. Garvey, Jr., and St. Paul Fire and Marine Ins. Co.
Wiedemann & Fransen, A. Remy Fransen, Jr., Raul R. Bencomo, New Orleans, for defendants-appellees, Dr. A. Mark Parker and Dr. Joseph F. Guenther.
Before REDMANN, GULOTTA and BEER, JJ.
GULOTTA, Judge.
This litigation resulted from the death of a prematurely-born infant. Plaintiff, the mother of the child, appeals from an adverse jury verdict resulting in the dismissal of her medical malpractice suit against the attending obstetricians, the treating pediatrician and the hospital. We affirm.
The facts are that the 19-year-old plaintiff was first examined by an obstetrician, Dr. Joseph Guenther, on September 12, 1972. He performed a full pelvic examination and determined that plaintiff was three months pregnant with an anticipated delivery date of March 16, 1973. On November 6, 1972 (following office visits on October 5 and 26), a second pelvic examination was made because of plaintiff's complaints of leaking fluid and of back pain. According to Dr. Guenther, this examination disclosed no complications, other than a mucous discharge for which medication was prescribed.
Thereafter, on November 16, 1972, plaintiff was given a third pelvic examination after complaints were made of a continued loss of fluid. Again, the obstetrician discerned no serious complications. The doctor attributed the "leaking fluid" to an inflammation of the cervix which he treated with silver nitrate. Plaintiff returned home, but after 9:00 p. m. the same day, she was taken to the Hotel Dieu emergency room by members of her family after she complained of acceleration of the leakage, stomach cramps, bleeding and passage of tissue.
Subsequent to her arrival at the hospital, plaintiff was given a pelvic examination by Dr. A. Mark Parker, an obstetrician and associate of Dr. Guenther. His examination revealed irritation of the cervix, but did not indicate symptomatology of impending labor. The cervix was closed; there was no evidence of water bag leakage; and there were no abdominal contractions. According to Dr. Parker, plaintiff was not hemorrhaging and any evidence of bleeding resulted from the cervix problem and was not indicative of premature labor. The patient was permitted to return to her home.
On the following morning, November 17, at approximately 8:45 a. m., plaintiff gave medically-unattended birth at home to a premature, 1 lb., 9 oz. baby. Shortly thereafter, plaintiff was taken by emergency vehicle to Hotel Dieu. The infant remained in the hospital until its death at 6:45 p. m. on November 19, 1972, some 58 hours after it was born.
Plaintiff seeks damages on her own behalf for mental anguish, anxiety and aggravation of a pre-existing health problem and damages for the wrongful death of the child.
The jury concluded that the obstetricians, Guenther and Parker, were not guilty of *697 medical malpractice. It did find, however, that Dr. Thomas J. Garvey, Jr., the pediatrician who attended the child after its birth, was guilty of malpractice and that Hotel Dieu was guilty of negligence. (We here interject that an appearance of indifference towards the inevitable death of a non-viable fetus may have been the jury's basis for the findings of malpractice and negligence.) The jury further concluded, however, that neither Garvey's malpractice nor Hotel Dieu's negligence was "the proximate cause of the death". Based on the jury's findings, the trial judge dismissed the action as to all defendants.
We reject plaintiff's contention that the jury verdict must be set aside because the wording of the interrogatories submitted to the jury erroneously required a finding that the malpractice of the pediatrician or the negligence of the hospital constituted "the" proximate cause of the death of the child. While acknowledging that the judge's oral instructions to the jury charged that there may be more than one proximate cause of the death, plaintiff, nevertheless, argues that the interrogatories, in conformity with this charge, should have required only a finding by the jury that the malpractice was "a" proximate cause of the death, and not "the" proximate cause of the death. It is true, as pointed out by plaintiff, that the interrogatory is, taken alone, an incorrect statement of the law. However, the jury was supplied with the correct statement of law on proximate cause by the trial judge. The trial judge specifically instructed the jury to take the law as given by him in the charge. Under the circumstances, we cannot conclude that the erroneous interrogatory on proximate cause led to confusion in the minds of the jurors. Quite to the contrary, the length of time of the deliberation (8 hours) and the inquiry made to the trial judge, during deliberation, for a redefinition of "evidence" leads to a conclusion that the jury was not shy but discerning. We might add that no request was made, during deliberation, for clarification of the law on proximate cause.
While not resting our decision on the failure of plaintiff to object to the specific wording of the interrogatory in the trial court, we conclude further that plaintiff has waived her right to raise an objection in this court. LSA-C.C.P. art. 1793 provides in pertinent part:
"A party may not assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. * * *" (emphasis ours)
See also: Troxlair v. Illinois Central Railroad Company, 291 So.2d 797 (La.App. 4th Cir. 1974), writ refused, 294 So.2d 834 (La. 1974); Mones v. Walton, 296 So.2d 370 (La. App. 4th Cir. 1974), writ refused, 300 So.2d 185 (La.1974). Such a specific objection would have afforded the trial judge the opportunity to rectify any error. Plaintiff's blanket objection to the failure of the court to submit the special interrogatories submitted by plaintiff does not state specifically "the matter to which he objects and the grounds of his objection", i.e., the judge's use of the word "the" instead of "a".
We further reject plaintiff's claim that the interrogatories were deficient because they failed to include the jurisprudentially-accepted criteria for the determination of malpractice by doctors and nurses. In his charge to the jury, the judge correctly stated the law relative to malpractice[1]; and, in any event, plaintiff has waived her right to object.
We also disagree with plaintiff's contention that the trial judge fell into error when he refused to permit plaintiff's *698 medical expert, Dr. James Storer, to testify on the standards of pediatric care in this community in 1972. Though Dr. Storer was qualified as a neonatologist, his pretrial deposition and his testimony disclosed that he had been at Duke University pursuing his studies during November, 1972, and by his own admission, was not competent to give testimony as to the customary standard of care among New Orleans pediatricians at that time. Dr. Storer was permitted to testify before the jury relative to the mortality rates of prematurely-born babies. We conclude, therefore, that the trial judge correctly limited the scope of this expert's testimony.
Finally, we reject plaintiff's contention that the findings of the jury exonerating the obstetricians and failing to find causation (with regard to the pediatrician and the hospital) were manifestly erroneous. Drs. Guenther and Parker testified that no symptoms of impending premature labor were revealed by their numerous pelvic examinations of plaintiff. They testified that examinations on November 16 indicated that there was no leakage of amniotic fluid, that the cervix was completely closed and that plaintiff was not experiencing contractions. In response to a hypothetical question based on the facts as testified by the obstetricians, Dr. John H. Dent, a pediatrician and pathologist, stated that there "was no indication of premature labor". The record supports the jury's finding that the obstetricians were not guilty of malpractice.
The record also supports the conclusion that neither any malpractice on the part of the pediatrician nor any negligence on the part of the hospital was a proximate cause of the death of the child. Based on plaintiff's medical history relating to the pregnancy and upon Dr. Garvey's physical examination of the child after its birth, the gestational age of the infant was estimated to be approximately 21-23 weeks. None of the medical experts had ever encountered a report of a child of the age and weight of the Caldwell infant who survived. Recognized studies by neonatal authorities, which were referred to in the testimony of the experts, revealed that the chances for survival of a child such as the Caldwell baby were virtually nonexistent. We conclude, therefore, that the record supports the jury's findings that plaintiff failed to establish causation between the pediatrician's malpractice and the hospital's negligence (if any) and the death of the child.
The judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] The judge stated in his charge:

"I further charge you that a physician . . . is not required to exercise the highest degree of skill and care possible.
"As a general rule, it is his duty to exercise the degree of skill ordinarily employed under similar circumstances by the members of his profession in good standing in the community or locality, and to use reasonable care and diligence along with his best judgment in the application of his skill to the case."