364 So.2d 661 (1978)
Maggie Ebarb BROWN et al., Plaintiffs-Appellants,
v.
ALLEN SANITARIUM, INC., et al., Defendants-Appellees.
No. 13668.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1978.
Rehearing Refused December 13, 1978.
*662 Donald R. Miller, Shreveport, Denver L. Thornton, El Dorado, Ark., for plaintiffs-appellants.
Mayer, Smith & Roberts by Charles L. Mayer, Shreveport, for defendants-appellees, Dr. J. H. Chidlow, et al.
Mayer, Smith & Roberts by Paul R. Mayer, Shreveport, for defendant-appellee, Dr. Jacqueline G. Morgan.
Simon, Fitzgerald, Fraser & Cook by Chatham H. Reed, Shreveport, for defendant-appellee, Allen Sanitarium, Inc.
Before BOLIN, PRICE and HALL, JJ.
En Banc. Rehearing Refused December 13, 1978.
PRICE, Judge.
Appellants are the wife and six children of a fifty-five-year-old man who died following a cystoscopic examination performed under a general anesthetic on June 29, 1972, at the Allen Sanitarium in Converse. They have appealed the judgment based on an adverse jury verdict rejecting their demands for damages in this medical malpractice action against Allen Sanitarium, Dr. John H. Chidlow, Dr. Jacqueline Morgan, and the malpractice liability insurers of these parties. We affirm the judgment for the reasons assigned.
The cystoscopic examination performed by Dr. Chidlow, an urologist of Shreveport, was recommended by Dr. W. J. Mitchell of Allen Sanitarium, who had been treating decedent for a severe urinary infection and gross hematuria for several weeks without a successful diagnosis. Decedent elected to have the procedure done under a general rather than local anesthetic to avoid as much pain as possible. Mrs. Doris Meredith, a registered nurse-anesthetist, administered the various drugs and gases to place decedent under the general anesthetic at about 2:10 p. m. on this afternoon of the examination. Decedent was given Succinylcholine di-Chloride, commonly called Anectine, which is used to relax or paralyze the skeletal muscles of the body to facilitate such an examination. Decedent was artificially respirated by Mrs. Meredith while under the influence of the Anectine as it also blocks the nerves controlling the diaphragm. The cystoscopic examination was completed and the Anectine discontinued at about 2:25 p. m. Because of the short time Anectine was administered it was expected that its effect would wear off within ten or fifteen minutes. As decedent had not resumed normal nerve function or breathing on his own by 3:00 p. m., the anesthetist concluded he had experienced an adverse reaction to the Anectine. She continued to provide positive pressure ventilation and to monitor decedent's vital signs.
At about 5:30 p. m. Dr. Chidlow requested Dr. Morgan, a general practitioner on *663 the staff at the sanitarium, take over the supervision of decedent's recovery so that Dr. Chidlow could return to Shreveport. After arriving in Shreveport, Dr. Chidlow consulted by telephone with Dr. Robert Haley, the director of anesthesiology at Schumpert Medical Center. Dr. Haley concurred in the diagnosis of an adverse Anectine reaction. Dr. Haley consulted by telephone with Dr. Morgan and Mrs. Meredith around 9:00 p. m. and suggested that in addition to the artificial respiration being continued, that precautionary X-rays be made of decedent's chest. At about 10:00 p. m., after being moved to the X-ray room, decedent suffered a cardiac arrest. His heart action was restored by external heart massage and an injection of adrenalin. Following this incident Dr. Morgan consulted with Dr. Chidlow and a decision was made to transfer decedent to Shreveport. He arrived by ambulance at Highland Hospital at about 1:20 a. m. and died approximately ten minutes later at 1:30 a. m. after suffering another cardiac arrest.
An autopsy was performed by Dr. A. M. Hand, pathologist at Schumpert Medical Center, which disclosed that decedent had a cardiac condition known as myocarditis (an inflammation of the heart muscle) which was subacute and diffuse. Dr. Hand concluded in the report that decedent would have survived had it not been for the myocarditis.
The allegations of negligence against Dr. Chidlow are generally his failure to perceive from decedent's medical history that a problem could occur if an Anectine reaction was experienced because of a known prior reaction of decedent to sulfa drugs, his failure to properly direct the nurse-anesthetist in deciding what drugs to use, his failure to timely diagnose that decedent was in a critical condition by midafternoon and to promptly transfer him to better medical facilities in Shreveport, his abandonment of the patient at 5:00 p. m. to return to Shreveport, and his failure to properly advise decedent's family of his condition. The allegations against Dr. Morgan are substantially the same as the allegations against Dr. Chidlow concerning the failure to diagnose decedent's condition and to transfer him to better facilities. The allegations against Allen Sanitarium are directed at its failure to comply with various state and federal laws and regulations.
Appellants' counsel has made specific assignments of error. The first two relate to the refusal of the trial judge to permit the introduction into evidence, either on direct or in rebuttal of defendant's evidence, the deposition of an expert witness, Dr. Charles W. Quimby, Jr., of Nashville, Tennessee, because of the locality rule. The third assignment relates to the failure of the trial judge to give numerous instructions requested by appellants in the court's charge to the jury. Although counsel for appellants designated that the instructions to the jury be included in the transcript of appeal, the record as filed does not contain the court's instructions to the jury. As this was noted in opposing counsel's brief, and no effort was made to supplement the record, we must presume appellant is content for this court to exercise its constitutional authority to review facts as well as law and decide the matter on the record before us. We therefore shall not discuss the failure of the trial court to give requested instructions.
We further find it unnecessary to rule on the admissibility of the deposition of appellants' expert, Dr. Quimby, as we have examined his deposition placed in the record under an offer of proof and do not find that his testimony when given full consideration would sustain the burden of proving negligence on the part of any defendant.
The burden of proof required of a plaintiff in a malpractice action is now set forth in La.R.S. 9:2794. This statute has been held to be procedural and to have retroactive effect in the recent case of Ardoin v. Hartford Acc. & Indem. Co., 360 So.2d 1331 (La.1978). The statute provides a plaintiff must prove:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians or dentists practicing in the same community or locality *664 to that in which the defendant practices; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians or dentists within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill, and
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
The primary allegation of negligence against Dr. Chidlow is that an examination of decedent's prior medical records would show that he had a reaction from a sulfa drug a few weeks prior to this time, and as this can be one of the several causes of myocarditis, he should have realized decedent would have difficulty in the event of an adverse reaction to Anectine. There is no medical testimony to support this allegation. Dr. Quimby, appellants' expert, was not questioned in this regard. The evidence shows that Dr. Mitchell, who was decedent's regular physician, had given decedent a series of medical examinations including electrocardiograms during the several days prior to the cystoscopic examination, and that there was no indication of any abnormality in his heart or cardiovascular system. The preponderance of the medical testimony shows there was no lack of good medical judgment in concluding decedent was capable of undergoing a general anesthesia.
Appellants contend Dr. Chidlow was negligent in failing to properly supervise the anesthesia administered to decedent by the nurse-anesthetist, Mrs. Meredith, and in permitting the anesthetist to select the drug to be used. The testimony of Dr. Haley shows that after the supervising physician decides the patient is suited for a general anesthetic, it is customary to rely on the anesthetist to decide which drugs are most suited for the particular situation. There is no evidence of any improper selection or administration of drugs to the decedent by Mrs. Meredith. Appellants' expert, Dr. Quimby, admitted the drugs and gases used were proper.
The remaining allegations of negligence against Dr. Chidlow and Morgan relate to the standard of care and treatment afforded decedent after he did not regain normal breathing within the usual time the effect of Anectine was expected to wear off.
We find the evidence to show that Dr. Chidlow was advised by Mrs. Meredith at about 3:00 p. m. that she was concerned decedent had an Anectine reaction as he had not regained nerve function or voluntary breathing as would have been expected. Appellants contend Dr. Chidlow should have made a decision at that point to move decedent to Shreveport where more adequate medical facilities were available. The course of treatment that was being followed was the accepted method in this area according to the testimony of Dr. Haley. His testimony also indicated it would have been the best medical judgment not to move decedent so long as it was believed he was merely experiencing an Anectine reaction.
The evidence shows that Dr. Chidlow did consult with a specialist, Dr. Haley, after it appeared the reaction would be protracted. Decedent was being prepared for X-rays to determine the condition of his chest when he suffered the cardiac arrest, which was the earliest time it could be determined that there was anything critical in his condition. He was then transferred to Shreveport as soon as his cardiac condition became sufficiently stabilized to permit the trip.
Appellants' expert, Dr. Quimby, testified in deposition that in his opinion a decision should have been made at 3:00 p. m. to move decedent to Shreveport to a medical facility that could have furnished a blood gas test at frequent intervals during the time artificial respiration was being utilized. *665 Dr. Quimby was of the opinion this is the only certain method of determining that the blood is being properly oxygenated to guard against pulmonary edema.
Dr. Haley testified that at the time of this incident in 1972, although Schumpert had the facility to give the blood gas test, it was a very sophisticated, expensive, procedure and was not generally used for patients requiring short periods of artificial respiration as is expected following an Anectine reaction.
Dr. Haley testified that the primary cause of decedent's death was the myocarditis which caused decedent to go into congestive heart failure. This opinion is corroborated by the autopsy report of Dr. Hand in which Dr. Hand concluded decedent would not have died except for the myocarditis.
We find appellants' evidence has failed to show that there was any lack of knowledge or skill on the part of Drs. Chidlow and Morgan or that their failure to exercise their best medical judgment was the cause of decedent's death.
Appellants contend Allen Sanitarium was at fault because it was in violation of La.R.S. 37:930 in permitting a registered nurse-anesthetist to administer a general anesthesia without being under the supervision of a licensed physician. Mrs. Meredith was under the control of Dr. Chidlow, and although he did not specifically direct her in the selection and the method of application of the drugs used in anesthetizing decedent, we do not interpret the statute to require the degree of supervision over a person possessing the skill and training of a registered nurse-anesthetist as that contended by appellants.
We further find that appellants' evidence fails to show that Allen Sanitarium was not in compliance with the various sections of the Code of Federal Regulations cited by appellants, or that any specific noncompliance was a proximate cause of decedent's death. The sanitarium was properly licensed by the appropriate state and federal regulatory agencies and was approved for medicare patients. Therefore, there is a presumption it was in compliance with the appropriate regulations.
There has been no proof of negligence on the part of Dr. Morgan or Mrs. Meredith for which the sanitarium could be liable under the doctrine of respondent superior as contended by appellants.
For the foregoing reasons, the judgment is affirmed at appellants' cost.