J. D. SAMUELS, Jr., Plaintiff-Appellant,

v.

DOCTORS HOSPITAL, INC., and Insurance Company of North America, Defendants-Third-Party Plaintiffs-Appellants,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, Hartford Fire Insurance Company and Dr. Heinz K. Faludi, Defendants-Third-Party Defendants-Appellees.

No. 76–4202.

United States Court of Appeals, Fifth Circuit.

Jan. 26, 1979.

Leonard Fuhrer, Alexandria, La., William P. Hannon, Jr., Atlanta, Tex., Helm, Jones & Fletcher, Richard P. Hogan, Houston, Tex., for plaintiff-appellant.

Charles L. Mayer, Shreveport, La., for St. Paul Fire.

James B. Gardner, Shreveport, La., for Doctor's Hospital & Insur. Co. of N.A.

Sidney E. Cook, Shreveport, La., for Dr. Faludi & Hartford Ins.

St. Paul Bourgeois, IV, Lafayette, La., amicus curiae for Market Ins. Co.

Before INGRAHAM, GEE and FAY, Circuit Judges.

INGRAHAM, Circuit Judge:

Appellant J. D. Samuels, Jr. brought this diversity action for medical malpractice against Dr. Warren D. Long, Dr. Heinz K. Faludi, and Doctors Hospital, Inc., and their respective insurers, St. Paul Fire & Marine Insurance Company (St. Paul), Hartford Fire Insurance Company (Hartford) and Insurance Company of North America (INA).[1] The district court granted the identical motions for summary judgment presented by St. Paul, Hartford and Dr. Faludi, on the ground that the opposing deposition testimony of Mr. Samuels' non-resident medical expert witnesses was inadmissible at trial under the Louisiana locality rule and thus insufficient to establish a genuine issue of material fact under Fed.R.Civ.P. 56(e).[2] Subsequent to the district court's entry of judgment and pending this appeal, the Louisiana Supreme Court abrogated the locality rule for medical specialists. *Ardoin v. Hartford Accident & Indemnity Co.*, La., 360 So.2d 1331 (1978). The question presented by this appeal is whether *Ardoin* applies retroactively in a diversity case, so as to render admissible and competent the deposition testimony offered by Mr. Samuels. We hold that the abolition of Louisiana's locality rule is ret-

1. In accordance with the realignment of the parties on this appeal, Mr. Samuels, Doctors Hospital, Inc. and INA will be referred to as the appellants.

2. Fed.R.Civ.P. 56(e) provides:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

The requirement of Rule 56(e) that affidavit testimony be competent and admissible evidence applies with equal force to deposition testimony. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Liberty Leasing Co. v. Hillsum Sales Corp.*, 380 F.2d 1013 (5th Cir. 1967).

roactive in diversity cases, reverse the district court's entry of summary judgment and remand for trial.

Mr. Samuels entered Doctors Hospital in Shreveport, Louisiana, on January 27, 1974, for a routine [3] laminectomy. Dr. Warren D. Long, a neurosurgeon, performed the surgery on January 28. Three days later, on January 31, Dr. Long left Mr. Samuels in the care of his colleague, Dr. Heinz K. Faludi, so that he could fulfill a prior commitment to deliver a lecture at Vanderbilt University.

While under the care of Dr. Faludi, Mr. Samuels developed a fever and numbness in his legs. When Long returned on February 3, he performed emergency surgery to treat an epidural tissue abscess. The surgery was unsuccessful. Mr. Samuels is now a permanent paraplegic with brain damage.

On January 28, 1975, Mr. Samuels filed suit against the two neurosurgeons and the hospital and their respective insurers. He alleges that Dr. Long and Doctors Hospital were negligent in failing to insure that the operation was conducted in a sterile environment and that Dr. Faludi was negligent in failing to timely detect the onset of a staph infection.

Pursuant to a joint stipulation, the district court entered an order of dismissal of the complaint against the physicians personally. Doctors Hospital and its insurer, INA, then filed cross-claims against St. Paul, Hartford and Dr. Faludi.

When it was discovered that Mr. Samuels intended to rely upon the testimony of two non-resident neurosurgeons who had never been licensed to practice in Louisiana, Dr. Gerald F. Winkler and Dr. James G. Wepsic,[4] St. Paul, Hartford and Dr. Faludi filed a motion for a protective order to exclude

their testimony, in view of Louisiana's adherence to the locality rule in medical malpractice cases. The district court issued a memorandum ruling granting the protective order on June 23, 1976. *Samuels v. Doctors Hospital*, 414 F.Supp. 1124 (W.D. La.,1976).

St. Paul, Hartford and Dr. Faludi then filed motions for summary judgment against Mr. Samuels and Doctors Hospital and INA, accompanied by deposition testimony and supporting affidavits. In opposition, Mr. Samuels offered the deposition testimony of the two non-resident neurosurgeons, while Doctors Hospital and INA contended that issues of material fact between Doctors Hospital and Mr. Samuels should bar summary judgment on the cross-claims. The district court entered summary judgment in favor of St. Paul, Hartford and Dr. Faludi on November 4, 1976, holding that the deposition testimony offered by Mr. Samuels could not establish the existence of genuine issues of material fact under Rule 56(e) since the testimony was inadmissible at trial.

Two arguments have been advanced on this appeal: (1) that in view of the intervening *Ardoin* decision, the deposition testimony of the out-of-state neurosurgeons offered by Mr. Samuels in opposition to the motions for summary judgment creates a genuine issue of material fact; and (2) that the deposition testimony and affidavits offered by St. Paul, Hartford and Dr. Faludi are insufficient to support their motions for summary judgment, because they are either self-serving or conclusory.[5] Since we find for the appellants on the first question, we need not address the second.

In granting summary judgment against Mr. Samuels, Doctors Hospital and INA, the

---

**3.** This characterization is Dr. Long's, appearing in his Discharge Summary, Summary of Hospitalization from 1–27–74 to 3–18–74.

**4.** Dr. Winkler and Dr. Wepsic are both board-certified neurosurgeons practicing in Massachusetts.

**5.** In support of their motions for summary judgment, the appellees offered the deposition

testimony of Dr. Long and Dr. Faludi and their colleague, Dr. Ashby. They also offered the one page affidavits of Dr. Boykin and Dr. Megison, Shreveport neurosurgeons, which recited that the treatment described in the deposition testimony of Dr. Long, Dr. Faludi and Dr. Ashby met Shreveport standards of care. *See Benton-Volvo-Metairie, Inc. v. Volvo Southwest, Inc.*, 479 F.2d 135 (5th Cir. 1973).

district court relied primarily upon the Louisiana Supreme Court's opinion in *Meyer v. St. Paul-Mercury Indemnity Co.*, 225 La. 618, 73 So.2d 781 (1953). *Meyer* described the standard of care to which a physician, surgeon or dentist should be held as "the degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the *same community or locality*." 73 So.2d at 782 (emphasis added).[6] Since Mr. Samuels' medical experts, Dr. Winkler and Dr. Wepsic, were not ordinarily employed as neurosurgeons in Shreveport, the district court properly excluded their testimony under *Meyer*.

While the instant case was pending in the district court, the Louisiana Legislature enacted a medical malpractice statute, La. Rev.Stat.Ann. § 9:2794 (West), which described the standard of care as follows:

The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians or dentists practicing in the same community or locality to that in which the defendant practices; and where the defendant practices in a particular speciality and where the alleged acts of medical negligence raise issues peculiar to the particular medical speciality involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians or dentists within the involved medical speciality.

The district court held that the new statute "does not control this controversy, for the statute was passed after the occurrence of the events which led to this law suit."

*Samuels v. Doctors Hospital,* 414 F.Supp. at 1127. At the time of the district court's decision, no Louisiana appellate court had construed the new statute, much less considered its retroactivity.

Pending appeal of the instant case, the Louisiana Supreme Court did have occasion to review the medical malpractice statute. *Ardoin v. Hartford Accident & Indemnity Co.*, La., 360 So.2d at 1340, expressly overruled *Meyer v. St. Paul-Mercury Indemnity Co., supra:*

[A medical specialist is required by La. Rev.Stat.Ann. § 9:2794 (West)] to exercise the degree of care and possess the degree of knowledge or skill ordinarily exercised and possessed by physicians within his medical speciality; and that the plaintiff seeking to prove that a medical specialist failed to adhere to these standards of care or skill is not limited to expert medical testimony by witnesses practicing or familiar with the standards of care and skill within the defendant specialist's community or locality.

360 So.2d at 1340. The court further held that the statute should apply retrospectively. *Id.* at 1339.

■ The policies underlying *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), require a federal court exercising diversity jurisdiction to apply the law of the state as interpreted by the state's highest court. Where a state's highest court would give retroactive application to a new standard of care, a federal court in a diversity case is required to do so. *Downs*

---

**6.** The locality rule stated in *Meyer* was reaffirmed in *Uter v. Bone and Joint Clinic,* 249 La. 851, 192 So.2d 100 (1966). It has been applied by intermediate appellate courts in Louisiana. *See, e. g., Delaune v. Davis,* 316 So.2d 7 (La. App. 1st Cir. 1975); *Glenn v. Kerlin,* 305 So.2d 611 (La.App. 2d Cir. 1974); *Busby v. St. Paul Fire & Marine Ins. Co.,* 290 So.2d 701 (La.App. 1st Cir. 1974); *Charouleau v. Charity Hospital of Louisiana at New Orleans,* 319 So.2d 464 (La.App. 4th Cir.), writ denied, 323 So.2d 137 (La.1975). However, the testimony of non-resident medical experts has been admitted into evidence by some courts. *See Chapman v. Argonaut-Southwest Ins. Co.,* 290 So.2d 779

(La.App. 1st Cir. 1974); *Zachary v. St. Paul Fire & Marine Ins. Co.,* 249 So.2d 273 (La.App. 1st Cir. 1971). *See also Favalora v. Aetna Casualty & Surety Co.,* 144 So.2d 544 (La.App. 1st Cir. 1962); *Couto v. Oms,* 319 So.2d 518 (La.App. 4th Cir. 1975).

The locality rule has also been applied as the rule of decision in diversity jurisdiction cases. *See, e. g., Mills v. Levy,* 537 F.2d 1331 (5th Cir. 1976); *Davis v. Duplantis,* 448 F.2d 918 (5th Cir. 1971); *Thompson v. United States,* 368 F.Supp. 466 (W.D.La.1973); *Frederic v. United States,* 246 F.Supp. 368 (E.D.La.1965); *George v. Phoenix Assur. Co.,* 215 F.Supp. 340 (E.D.La. 1963), aff'd 328 F.2d 430 (5th Cir. 1964).

*v. J. M. Huber Corp.,* 580 F.2d 794, 796 (5th Cir. 1978).[7] Since Mr. Samuels would be entitled to a reversal of the district court's entry of summary judgment if he had filed his action in the Louisiana state courts, he is entitled to nothing less in the federal courts.[8]

The Supreme Court in *Erie* was not confronted with a change in state law during the course of the litigation. When the issue was squarely presented, the Supreme Court held that "the duty rests upon federal courts [in diversity cases] to apply state law under the Rules of Decision statute in accordance with the *then* controlling decision of the highest state court." *Vandenbark v. Owens-Illinois Glass Co.,* 311 U.S. 538, 543, 61 S.Ct. 347, 350, 85 L.Ed. 327 (1941) (emphasis added). In *Vandenbark,* the Supreme Court reversed a lower court's dismissal of a personal injury action for failure to state a claim cognizable under Ohio law, when pending the appeal the Ohio Legislature amended the Workmen's Compensation Act to expressly recognize such an action. In applying the *Vandenbark* rule, this court recently reversed the district court's entry of judgment on a directed verdict in a wrongful death action, where pending the appeal the Texas Supreme Court recognized a new standard of care owed by occupiers of land to business invitees. *Downs v. J. M. Huber Corp.,* 580 F.2d at 796.[9] *See also Hathcock v. Commercial Union Ins. Co.,* 576 F.2d 653 (5th Cir. 1978). The same principle requires a reversal of the entry of summary judgment in the instant case, given the Louisiana Supreme Court's intervening recognition of a new standard of care owed by medical specialists to their patients.

Guided by the *Erie* doctrine and the *Vandenbark* rule, we hold that the abolition of the locality rule in Louisiana medical malpractice litigation applies retrospectively in federal as well as state courts. Consequently, the deposition testimony of out-of-state neurosurgeons offered by Mr. Samuels is admissible and competent to oppose the appellees' motions for summary judgment. Furthermore, the deposition testimony offered by Mr. Samuels establishes the existence of genuine issues of material fact. Accordingly, we reverse the entry of summary judgment against Mr. Samuels, Doctors Hospital and INA and remand to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.

---

**7.** In applying an *Erie* analysis to *Downs,* we were required to ascertain how the Texas Supreme Court would resolve the retroactivity issue. In the instant case, the Louisiana Supreme Court has already answered the question.

**8.** *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), upon which the appellees rely in discussing the retroactivity issue, is inapposite, because it is not a diversity case. *Chevron Oil* arose under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq. (1970). The issue before the Court was whether the timeliness of the action was governed by the Louisiana statute of limitations for personal injury suits or federal admiralty law of laches. The Court held that under the Lands Act, the state statute of limitations is "absorbed" into the federal statute. The Court expressly disavowed the notion that "a federal court adjudicating a claim under state law as absorbed in the Lands Act must function as it would in a diversity case." *Id.* at 103 n. 5, 92 S.Ct. at 353.

**9.** *Downs* rested alternatively upon the *Erie* doctrine and the *Vandenbark* rule. As we noted in *Downs,* application of the two doctrines could lead to different results where the highest court of the state would give a decision only prospective application. 580 F.2d at 796 n. 4. Here as in *Downs,* the two doctrines lead to the same result. Hence, we have no need to reconcile the two approaches. See 1A J. Moore, Federal Practice § 0.307[3] (1978).