Gustavo A. PESANTES, Jr., as Administrator of the Succession of Gustavo Adolph Pesantes, et al., Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 78–2269.

United States Court of Appeals, Fifth Circuit.

July 10, 1980.

W. Robert Morgan, Edna Sakir Morgan, New Orleans, La., W. C. D. Friederichsen, Gretna, La., for plaintiffs-appellants.

John P. Volz, U. S. Atty., Robert L. Boese, Asst. U. S. Atty., Marc J. Yellin, New Orleans, La., for defendant-appellee.

Before WISDOM, RONEY, and HATCH-ETT, Circuit Judges.

WISDOM, Circuit Judge:

On first analysis, this appeal seemed to involve a simple procedural question under the Federal Rules of Evidence: Did the district court err in excluding the testimony of an expert medical specialist, unfamiliar with medical practices in the locality (Greater New Orleans)? Closer consideration of the case leads us to conclude that it turns on a substantive principle of law: In a malpractice case, the duty of care imposed on a medical specialist is governed by the standard of care within the specialty itself, regardless of the locality where the operation was performed. That principle, which goes to the core of determining the liability of a defendant physician, is now recognized as the law of Louisiana, the applicable law of the forum state under the Federal Torts Claim Act. Accordingly, we reverse the district court for excluding the testimony of the defendant's principal expert witness, a Boston specialist in anesthesiology.

I.

In June 1973, 55 year-old seaman Gustavo Adolph Pesantes was admitted to the United States Public Health Service Hospital in New Orleans to undergo a routine umbilical hernia operation. The hospital's physicians determined that surgical repair of the hernia was a medical necessity for Pesantes to remain fit for seaman's duties. Pesantes knowingly consented to an operation.

Pesantes's surgery began shortly after 9:00 a. m. on June 22, 1973. The attending anesthesiologist, Dr. William Hetrick, after some difficulty, placed an endotracheal tube in Pesantes with the object of assuring an adequate supply of oxygen to the patient's lungs during the operation. At about 9:35 a. m., the hospital residents, Albert Arrillago, M.D., and James Bates, M.D., commenced the operation. They halted the surgery several minutes later when Pesantes experienced respiratory difficulties. The attending physicians administered a drug to suppress a bronchospasm by Pesantes and continued with the operation after his spasm had subsided. Later, a second bronchospasm occurred. Pesantes's pulse rate declined, his blood pressure dropped, and there were signs of cyanosis. In an effort to resuscitate Pesantes, the physicians gave him various drugs and performed cardiac massage. His condition continued to deteriorate. He died at 10:15 a. m.

The Administrator of Pesantes's Succession brought this action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (FTCA), alleging that the negligence of the hospital and members of its staff participating in the operation on Pesantes proximately caused his death. Specifically, the plaintiff alleged that the attending anesthesiologist negligently placed the endotracheal tube in Pesantes's esophagus rather than in his trachea. The plaintiff alleged also that Pesantes died because the hospital's physicians over-administered intravenous fluids, commenced the operation despite Pesantes's acute anoxia, and instituted resuscitative measures too late. Two days after the death an autopsy was performed. It showed that Pesantes had

suffered acute heart failure on the operating table and that his lungs were filled with fluid and were almost devoid of air; air had dilated his stomach to twice its normal size. The plaintiff contended that the pathology findings confirmed what was clear from Pesantes's clinical course: he died an anoxic death that should have been avoided by removing the endotracheal tube and establishing a patent airway to Pesantes's lungs.

The district court, after at a bench trial, found that the United States "had shown by a preponderance of the evidence that the . . . Hospital, its staff and personnel did not act negligently or improperly or in any way deviate from the standard of care as practiced in this community in connection with its treatment of Mr. Pesantes". On appeal, the plaintiff maintains that the testimony of a nonresident medical expert was improperly excluded, that the district court's findings of fact were clearly erroneous, and that the district court should have applied the doctrine of res ipsa loquitur.

## II.

■ The principal question on appeal is whether the district court erred in excluding the testimony of the plaintiff's chief medical expert, Dr. George E. Battit, an anesthesiologist on the staff of Harvard Medical School who practiced at the Massachusetts General Hospital in Boston. The court based its ruling on Louisiana's "locality rule".[1] Under the locality rule a physician is held only to that "degree of skill and care which is usually possessed and exercised by practitioners of their profession in the same locality or community." *Meyer v. St. Paul-Indemnity Co.,* 1953, 225 La. 618, 73 So.2d 781, 786. Dr. Battit had not practiced medicine in Louisiana and was not familiar with the degree of skill exercised by surgeons and anesthesiologists in the Greater New Orleans area. The district court concluded, therefore, that Dr. Battit was incompetent to testify as to whether the hospital's staff performed the operation in accordance with the accepted standards of medical practice in New Orleans.

The district court's ruling on the admissibility of Dr. Battit's testimony was based on the line of cases which follow the locality rule as stated in *Meyer.*[2] Shortly after the district court's decision the Louisiana Supreme Court overruled *Meyer* and its progeny. *Ardoin v. Hartford Accident and Indemnity Co.,* La.1978, 360 So.2d 1331. *See* Note, Medical Malpractice in Louisiana— The Rejection of the Locality Rule as Applied to Specialists, 39 La.L.Rev. 306 (1978).

*Ardoin* is an interesting example of civilian methodology. Mr. Justice Dennis, writing for the Louisiana Supreme Court, pointed out that the Louisiana Court of Appeals had made the mistake of using the common law method of relying on prior decisions. He wrote:

---

**1.** Numerous articles discussing the "locality rule" have appeared in periodicals. *See, e. g.,* Waltz, *The Rise and Gradual Fall of the Locality Rule in Medical Malpractice Litigation,* 18 DePaul L.Rev. 408 (1969); Comment, *A Review of the Locality Rule,* 1975 Univ. of Ill.L.Forum 96; Comment, *Standard of Care for Medical Specialists,* 16 St. Louis Univ.L.J. 497 (1972); Comment, *An Evaluation of Changes in the Medical Standards of Care,* 23 Vand.L.Rev. 729 (1970); Comment, *Standard of Care for Medical Practitioners—The Locality Rule,* 14 S.Dak. L.Rev. 349 (1969); Comment, *The Locality Rule in Medical Malpractice Suits,* 5 Cal.W.L.Rev. 124 (1968); Comment, *Recent Developments— Medical Specialties and the Locality Rule,* 14 Stan.L.Rev. 884 (1962); Note, 38 Ohio St.L.J. 202 (1977); Note, 25 Ark.L.Rev. 169 (1971); Note, 18 DePaul L.Rev. 328 (1968).

**2.** At the time of the trial in this case, March 1978, most courts, applying Louisiana's locality rule, had excluded the expert medical testimony of non-local physicians. *See, e. g., Mills v. Levy,* 5 Cir. 1976, 537 F.2d 1331, 1333; *Samuels v. Doctors Hospital, Inc.,* W.D.La.1976, 414 F.Supp. 1124, 1129–30, *rev'd,* 5 Cir. 1979, 588 F.2d 485; *Caldwell v. Parker,* La.App. 4th Cir. 1976, 340 So.2d 695, 697–98; *Charoleau v. Charity Hospital,* La.App. 4th Cir. 1975, 319 So.2d 464, 468. *But cf. Chapman v. Argonaut-Southwest Ins. Co.,* La.App. 1st Cir. 1974, 290 So.2d 779, 782; *Zachary v. St. Paul Fire & Marine Ins. Co.,* La.App. 1st Cir. 1971, 249 So.2d 273.

Instead of beginning with the keystone of responsibility, Article 2315,[3] and reading La.R.S. 9:2794 in the light of it and other pertinent articles, the intermediate court approached the problem as one of deciding the extent, if any, to which the jurisprudence had been amended by the legislative act. Thus, rather than reading La.R.S. 9:2794 as the lawmakers' indication of how the basic principle of Article 2315, as amplified by Article 2316, should be applied in a particular class of cases, the appeals court measured the enactment solely against language contained in a judicial opinion. The basic error in this method of interpretation is that it not only ignores the first principles of our law but it also assumes that jurisprudence is equivalent to legislation instead of treating it as judicial interpretation which may or may not adequately reflect the meaning of the laws for contemporary purposes.

360 So.2d at 1335–36.

The Court next considered the effect of Louisiana's medical malpractice statute, La. Rev.Stat.Ann. § 9:2794 (effective 1975), on the locality rule. Section 9:2794(A)(1) provides:

> [W]here the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians . . . *within the involved medical specialty* [and must prove] [t]hat the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill (emphasis added).

At this point, the Louisiana Supreme Court aptly observed:

**3.** "The standard of conduct required of persons in Louisiana in their relationships with one another is stated in simple, general terms set forth in Article 2315 of the Louisiana Civil Code of 1870:

> 'Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it.

[A] tenet of our legal philosophy becomes apparent, i. e., that civil and criminal sanctions imposed for socially unacceptable conduct should be applied equally throughout the state to all citizens within the same class or set of circumstances. Therefore, one must conclude that, if the legislature were to act contrary to this policy by establishing a different definition of negligence, imprudence or want of skill by a medical specialist within each locality, the lawmaking body would express its intention explicitly. Since La. R.S. 9:2724 contains no such expression pertaining to medical specialists, the statute should not be given the effect of Balkanizing those representing themselves as having superior skill or knowledge beyond that common to the medical profession by the application of varying geographic standards of fault.

360 So.2d at 1336.

The *Ardoin* Court concluded that the statute supersedes the locality rule as it applies to the practice of a medical specialty, because the statute requires medical specialists to exercise that degree of care ordinarily practiced by other physicians engaged in the same speciality rather than the degree of care exercised by physicians practicing in a similar community. Accordingly, the Court held that the "testimony of qualified experts, regardless of whether practicing within or familiar with the defendant doctor's locality is admissible to prove the degree of care ordinarily exercised and the degree of skill or knowledge ordinarily possessed by physicians within the involved medical specialty". *Id.* at 1340. Significantly, *Ardoin* held that section 9:2794's rejection of the locality rule applies retroactively to causes of action that arose before the passage of the statute.[4]

'\* \* \*.'

This single article forms the basis of all tort liability in Louisiana." 360 So.2d at 1334.

**4.** The *Ardoin* Court concluded that section 9:2794 "does not establish new rights and duties but merely determines the meaning of existing laws and may thus be applied to facts occurring prior to its promulgation." 360

In *Samuels v. Doctors Hospital, Inc.*, 5 Cir. 1979, 588 F.2d 485, 488–89, a diversity case, the question was whether *Ardoin* governed a medical malpractice action based on a laminectomy performed by Shreveport, Louisiana neurologists, in January 1974. This Court noted that under the rule of *Erie Railroad Co. v. Tompkins*, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, the district court was required to apply the *substantive* law of Louisiana as interpreted by that state's highest court. We followed *Ardoin* as "the *then* controlling decision of the highest state court", and held that section 9:2794 applies retroactively in federal courts as well as state courts with respect to the practice of a medical speciality.[5] 588 F.2d at 489 (quoting *Vanderbark v. Owens-Illinois Glass Co.*, 1941, 311 U.S. 538, 543, 61 S.Ct. 347, 350, 85 L.Ed. 327) (emphasis added).

■ This is not a diversity case; here, subject matter jurisdiction is based on the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. Nevertheless, we must reach the same result on this point that the court reached in *Samuels*. The FTCA subjects the United States to liability for personal injury or death caused by the negligence of any employee of the government. The United States is liable for the torts of its employees "in the same manner and to the same extent as a private individual". *Id.* at § 2674. The government's liability, therefore, is resolved by the law of the state where the alleged tort occurred.[6] *Id.; United States v. Muniz*, 1963, 374 U.S. 150, 153, 83 S.Ct. 1850, 1852, 10 L.Ed.2d 805, 809; *Market Insurance Co. v. United States*, 5 Cir. 1969, 415 F.2d 459, 461.

Because the liability of the United States in this case is governed by Louisiana negligence principles, the holding of the Louisiana Supreme Court in *Ardoin* is controlling. We must also, as the State Supreme Court did, apply La.Rev.Stat.Ann. § 9:2794 retroactively. The physicians engaged in the practice of a medical speciality who treated Pesantes on June 22, 1973 must be held to the degree of care and skill ordinarily exercised by physicians engaged in their respective medical specialties. The testimony of the plaintiff's nonresident medical witness, Dr. Battit, a witness unquestionably highly qualified, was relevant and should have been admitted under Rules 401 and 402 of the Federal Rules of Evidence to prove the standard of care required of the attending physicians by section 9:2794. *See* 360 So.2d at 1340.

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.[7]

So.2d 1339. Because section 9:2794 was regarded as a remedial or procedural rather than a substantive provision, the Court enforced the statute retroactively. 360 So.2d at 1338–39. Cases decided after *Ardoin* consistently have applied *Ardoin* to medical malpractice cases involving acts that took place before the passage of section 9:2794. *See, e. g., Bryant v. St. Paul Fire & Marine Ins. Co.*, La.App. 3d Cir. 1978, 365 So.2d 537; *Brown v. Sanitarium, Inc.*, La.App. 2d Cir. 1978, 364 So.2d 661, 663; *White v. Edison*, La.App. 1st Cir. 1978, 361 So.2d 1292, 1295.

5. *Samuels* held that the testimony of out-of-state neurosurgeons was admissible to determine whether neurosurgeons in Shreveport, in performing the laminectomy, had exercised the degree of care ordinarily practiced by other neurosurgeons.

6. The only exception to the rule that the law of the state where the act or omission occurred controls recovery under the FTCA applies where state law permits the recovery of punitive damages for wrongful death. Section 2674 of the FTCA limits the liability of the United States to actual or compensatory damages measured by the pecuniary injuries resulting from the wrongful death.

7. Because we reversed the district court on the ground that the testimony of Dr. Battit was improperly excluded, we need not address the plaintiff's argument that the district court's findings of fact were clearly erroneous. We find unpersuasive the plaintiff's other point of error, that the district court improperly refused to apply the doctrine of res ipsa loquitur. The district court's opinion states "We need not rule on the legal issue of who has the burden of proof, since even if defendant has that burden and even if plaintiff is given the benefit of a presumption or inference of negligence, the defendant has by a preponderance of the evidence carried its burden of proof and overcome any presumption or inference of negligence." This statement shows that the district court gave the plaintiff the benefit of a presumption of negligence.