Connie BULLINGTON,
Plaintiff-Appellant,

v.

TEXAS ELECTRIC SERVICE COMPANY et al., Defendants-Appellees,

Aetna Casualty & Surety Company,
Intervenor.

No. 75–3658.

United States Court of Appeals,
Fifth Circuit.

April 7, 1978.

Laurance L. Priddy, Fort Worth, Tex., for plaintiff-appellant.

William L. Hughes, Jr., Fort Worth, Tex., for Tex. Electric, etc.

Grover Swift, Fort Worth, Tex., for Boro Industries, Inc.

Before GODBOLD, TJOFLAT and HILL, Circuit Judges.

TJOFLAT, Circuit Judge:

In this diversity case, the surviving spouse of a deceased construction worker seeks to recover damages under Texas tort law for the fatal injuries sustained by her husband while he was involved in a small construction project in Fort Worth, Texas.[1] There are two defendants: (1) Boro Industries, Inc. (Boro), the owner of the building on which the deceased was working at the time of his death; and (2) the Texas Electric Service Company (Texas Electric), a Texas corporation that owned and maintained certain high-voltage power lines in close proximity to the building project in question. In the proceedings below, the district court granted summary judgment for both defendants, and the plaintiff appealed.

A recent decision of the Supreme Court of Texas, *Parker v. Highland Park, Inc.*, 21 Tex.Sup.Ct.J. 188 (Feb. 8, 1978), handed down on February 8, 1978, and called to our attention since oral argument, has abolished the theory of law on which the district court predicated its award of summary judgment. Consequently, we must vacate the judgment and remand this case for further proceedings. In undertaking to explain why the *Parker* decision requires this result, we think it appropriate to review in some detail the salient facts of this case and how the district court arrived at its disposition.

## I

The facts of the case are largely undisputed. The plaintiff's deceased spouse, William Bullington, was a construction worker employed by the Component Construction Corporation (Component). Component had been subcontracted to do certain work on the construction of a metal building for Boro on Boro's premises. The work included the installation of metal gutter pipe along the upper edge of the one-story building. The installation of the gutter pipe involved hoisting the pipe to the roof of the building in twenty-foot sections and then anchoring the sections in place along the edge of the roof.

At the time this work was taking place, Texas Electric owned an easement and maintained power lines quite close to the site on which Boro's building was being erected. Prior to Bullington's accident, in fact, the lines had been snapped once by a piece of construction equipment. No one had been injured when the lines were broken, and they were repaired by Texas Electric. An investigation undertaken after Bullington's accident revealed that between the power lines and the edge of Boro's building there was a clearance of approximately five feet, eight inches. From the record before us, it appears that Texas Electric's lines were in place long before the construction of Boro's building began.

Component's job-site superintendent, James Eads, was aware of the proximity of the power lines and was apparently disturbed over the situation. He spoke with Boro representatives about the problem, but could secure no immediate remedial measures since in all likelihood this would have entailed shutting down an operational Boro plant located nearby. Eads did alter Component's construction methods to minimize the risk of exposure to the high-voltage wires, and he warned Component's employees of the problem on a daily basis.

William Bullington began working on the Boro job about two weeks prior to his fatal

---

1. Although the worker's spouse, Connie Bullington, was the only named plaintiff in the proceedings below, she sued to recover not only her own damages but also those allegedly owed the deceased's two minor children.

accident. There is no real question that he knew about the wires and the danger of the situation. He was warned about the danger when he came on the job, was reminded of it daily, and was specifically cautioned by his superintendent, Eads, no more than ten or fifteen minutes before the accident happened.

The accident in question occurred on August 24, 1972. On that day, Bullington was to install the twenty-foot sections of gutter pipe. Bullington stationed himself on the roof of the building while a fellow Component employee remained on the ground. The employee on the ground would secure a section of pipe in a vice grip attached to the end of a rope, and Bullington would then hoist that section onto the roof. At the time of the accident, this operation was being performed on the side of the building next to the Texas Electric power lines.

No one saw the accident itself. The worker on the ground heard a thud from the roof and summoned the superintendent, Eads. Eads went up onto the roof to inspect and found Bullington lying dead across a section of pipe. There were burn marks near the end of the pipe and on the lowest of the electrical wires. The pipe was not attached to the vice grip and rope apparatus, which may permit the inference that the accident occurred sometime after the pipe had been hoisted to the roof and detached from the vice grip.

Mrs. Bullington initiated this litigation with a complaint filed in the district court on May 8, 1973. The controlling pleading for instant purposes is her second amended complaint, filed on August 19, 1974. Both Texas Electric and Boro moved for summary judgment based on a number of theories, and eventually the district court granted those motions.

The district court entered two orders to undergird its summary judgment for the defendants. The first was entered on July 15, 1975, and it relied upon two theories of Texas tort law then in force: (1) the so-called "no duty" rule, which defined certain of the responsibilities inherent in the relationship between an owner-occupier of land and his business invitees; and (2) the Texas doctrine of *volenti non fit injuria*, which was simply another name for the common-law doctrine of assumption of risk. Briefly, the no duty doctrine related to the landowner's duty to warn his business invitees of unsafe conditions existing on his premises. If the unsafe conditions were not obvious, but were known (or in the exercise of reasonable care should have been known) to the owner, then it was the owner's duty to warn his business invitees about the unsafe conditions. If, on the other hand, the dangerous conditions were open and obvious, then the landowner was said to have "no duty" to warn his invitees of those conditions. The *volenti* doctrine was a relative of "no duty" but was broader in scope. *Volenti* was an affirmative defense which stated that when one is fully aware of the risk of injury in a given context, but nevertheless voluntarily exposes oneself to that risk, one cannot later recover if the exposure results in injury. In its order entered on July 15, 1975, the district court held that each of these doctrines would preclude the plaintiff's recovery under Texas law.

Soon after the district court entered its July 15 order, the court was advised that one week prior to the entry of that order the Texas Supreme Court had abolished the *volenti* defense as a self-sufficient bar to recovery under Texas law. *Farley v. M.M. Cattle Co.*, 529 S.W.2d 751 (Tex.1975). Instead, the Texas Court said *volenti* would henceforth be subsumed under principles of contributory negligence. Accordingly, the district court entered a supplemental order on September 17, 1975. In that order, the court withdrew its prior holding that *volenti* barred recovery in this case, but maintained that the no duty doctrine still operated to preclude the plaintiff's recovery and declined to vacate its summary judgment for the defendants. This appeal ensued.

II

That the Texas Supreme Court has now abolished the no duty rule does not in principle preclude our affirmance of the judgment below, of course. Even though the

district court relied solely on the no duty rule, we are obligated to examine the law as it now exists in order to determine whether, on the facts developed in the summary judgment proceedings, the current state of the law might require that we affirm the district court notwithstanding the abolition of the no duty rule. In our view, it cannot.

The record before us discloses that there is a crucial gap in the direct evidence of exactly what happened when William Bullington suffered the fatal accident which underlies this case. There were no witnesses to the events that occurred on Boro's roof immediately prior to Bullington's accident, nor did anyone see the accident itself. Thus, a determination of exactly what happened in this case will have to rest on circumstantial evidence, and the trier of fact will be required to assess a wide assortment of permissible inferences in order to conclude which group of inferences is supported by the greater weight of the evidence. For this reason, Bullington's case would be peculiarly inappropriate for summary judgment if the particular circumstances of the accident are material to the disposition of the case.

Under the no duty rule upon which the district court based its summary judgment, however, the circumstances of the accident itself were of no moment. The crucial fact

for the purposes of applying the no duty rule was that William Bullington was fully aware of the high-voltage lines next to the Boro building and of the danger those lines presented. Under Texas law the no duty rule did not operate as an affirmative defense. Rather, the plaintiff-invitee was required to negate the existence of "no duty" —i. e., to establish that a duty *was owed him* by the defendant-landowner—as part of his case in chief. And as part of his proof, the plaintiff would have to demonstrate that he had no actual or constructive notice of the dangerous condition that existed on the defendant's premises and led to the plaintiff's accident.

■ On the record before us, there is no genuine issue of fact as to Bullington's knowledge of the dangerous power lines next to the Boro building. Thus, through the application of the no duty rule, his inability to establish that the defendants were under a duty to warn him about those wires precluded recovery, and the district court was correct in so holding.[2] The recent case of *Parker v. Highland Park, Inc.,* 21 Tex.Sup.Ct.J. 188 (Feb. 8, 1978), however, has produced a different situation.

In the *Parker* case, a woman had been injured in a fall on a dark stairway located on the defendant's premises. Her complaint alleged that the defendant had been negligent in failing to light the stairway

**2.** In her brief and at oral argument, the plaintiff-appellant strongly urged that the defendants-appellees' alleged violation of two statutes, articles 1436a and 1436c, Tex.Rev.Civ. Stat.Ann. (1967), required that we reverse the district court's judgment. The statutes in question imposed certain clearance requirements between high voltage lines and buildings, and the power lines involved in this case were, unquestionably, *too close to Boro's building* under either statute. Texas follows the majority rule that, under certain conditions, a party's statutory violation constitutes negligence *per se. See, e. g., Parrott v. Garcia,* 436 S.W.2d 897 (Tex.1969).

In our view, the appellant's negligence *per se* argument did not require that we reverse the district court. In connection with the landowner-invitee relationship, the Texas courts fashioned the no duty rule as a specialized standard by which to assess the conduct of those parties. Before the no duty rule was put to rest, when a

plaintiff-invitee sought to establish the negligence element of his case, he had to show that the landowner-defendant knew or should have known of a dangerous condition existing on his premises, *that the invitee himself did not know of that condition,* and that the landowner failed to take reasonable steps to warn the invitee of the danger. Initially, the dangerous condition may have been created by the landowner's own *negligence or by a wholly innocent chain of* circumstances, but any characterization of those events as "negligent" or "nonnegligent" was irrelevant in the landowner-invitee relationship. The relevant inquiry was whether the landowner fulfilled his notice duty toward the invitee in a reasonable (*i. e.,* nonnegligent) fashion. Thus, assuming that the plaintiff in this case had met all the conditions for the application of the negligence *per se* rule, that rule would still not have allowed her to recover in the face of her inability to surmount the no duty barrier.

and that this failure had proximately caused the injuries sustained in her fall. At trial, the case was submitted to the jury on a special verdict. The jury found that the defendant had been negligent in failing to light the stairway and that this negligence had proximately caused the plaintiff's injuries. The jury also found, however, that the plaintiff had been warned of the danger before she undertook to descend the stairway. Nevertheless, the trial court entered judgment for the plaintiff. The Texas Court of Civil Appeals reversed, holding that the jury's decision that the plaintiff had been warned of the danger precluded her recovery due to the operation of the no duty rule. *Highland Park, Inc. v. Parker*, 545 S.W.2d 275 (Tex.Civ.App.—Eastland 1976).

On writ of error, the Texas Supreme Court reversed the Court of Civil Appeals and reinstated the judgment for the plaintiff, specifically holding that the no duty rule no longer will operate as a self-sufficient bar to recovery under Texas law. Instead, the Texas Court stated that the reasonableness of a plaintiff's conduct—including the plaintiff who knew of and appreciated the danger of a given situation—would henceforth be determined under principles of contributory negligence. 21 Tex.Sup.Ct.J. at 191. Thus, in landowner-invitee cases, the Texas Court has explicitly removed the plaintiff's burden of proving that he had no actual or constructive knowledge of the dangerous condition of the defendant's premises. The defendant-landowner now bears the burden of proving that the plaintiff knew of the dangerous condition, and even where that fact is proved, it will not necessarily bar recovery. As the Texas Court stated,

> One's conduct after he is possessed of full knowledge, under the circumstances may

be justified or deemed negligent depending upon such things as the plaintiff's status, the nature of the [defendant's] structure, . . . the degree and seriousness of the danger, . . . the kind and extent of a warning, and the precautions taken under the circumstances by a plaintiff . . . .

*Id.* at 21 Tex.Sup.Ct.J. at 193. In other words, the "knowing" plaintiff will not be considered contributorily negligent as a matter of law in all cases. To be sure, the plaintiff's knowledge of the danger may bear heavily on whether his conduct was negligent, but it will not conclusively establish that fact. And even if the trier of fact decides that the plaintiff was negligent, it will have to determine whether he was *contributorily* negligent, which will require inquiry into questions of causation. As to all these matters, of course, the burden of persuasion will be on the defendant, since henceforth the issue will be framed in terms of the affirmative defense of contributory negligence.[3]

The Texas Supreme Court's decision in *Parker* directly controls our disposition of this case.[4] Prior to *Parker*, the precise circumstances of William Bullington's accident were irrelevant; because he knew of the dangerous power lines next to Boro's building, the defendants owed him no further duty. After *Parker*, however, the circumstances of Bullington's conduct at the time of the accident are of critical importance, since they bear on the affirmative defense of contributory negligence. As we have previously recounted, there is no direct evidence of what happened when Bullington was killed, and it will be the defendants' burden to prove, through circumstantial evidence, that Bullington's actions were contributorily negligent. Clearly, there exists a genuine issue of fact in this case which, in light of *Parker*, is a material one. Accord-

---

**3.** Or, in cases based on incidents occurring after September 1, 1973, comparative negligence. As of that date, Texas's comparative negligence statute took effect. *See* Tex.Rev.Civ. Stat.Ann. art. 2212a (Supp.1976).

**4.** Of course, when the law governing a case changes during the pendency of an appeal before this court, we are bound to apply the law

as revised, absent specific directions to the contrary. *See, e. g., Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Carpa, Inc. v. Ward Foods, Inc.*, 567 F.2d 1316 (5th Cir. 1978). *Cf. Bradley v. School Bd. of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

ingly, the district court's summary judgment for the defendants must be VACATED and this case will be REMANDED for further proceedings.

VACATED AND REMANDED.