**Verona Deloach DOWNS et al., Plaintiffs-Appellants,**

v.

**J. M. HUBER CORPORATION, Defendant-Appellee.**

No. 76–4067.

United States Court of Appeals, Fifth Circuit.

Sept. 21, 1978.

Jim Duvall, Dumas, Tex., for plaintiffs-appellants.

S. Tom Morris, Amarillo, Tex., for defendant-appellee.

Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.

GODBOLD, Circuit Judge:

Between the trial and the appeal of this diversity case the Texas Supreme Court

---

8. Marshall's fees are taxed as costs under the explicit permission of 28 U.S.C. § 1920.

rendered a decision that undercuts the basis for the trial court's directed verdict for the defendant. We must decide whether the intervening state court decision operates retroactively. We conclude that it does and reverse and remand for further proceedings.

Bobby Ray Downs was employed by Fish Engineering and Construction Company. Huber Corporation, the defendant, hired Fish as an independent contractor to perform construction work on Huber's premises. Downs was killed when a crane he was guiding ran through overhead power lines and transmitted a high voltage shock. Downs' wife and children sued Huber under the Texas wrongful death statute,[1] claiming that Huber negligently breached its duty to provide a safe working environment to its business invitees.

At the time of trial in 1976 Texas negligence law defined the standard of care owed by a land occupier to business invitees under the Texas "no duty rule." *See generally, e. g., Adam Dante Corp. v. Sharpe,* 483 S.W.2d 452 (Tex.1972); *Delhi-Taylor Oil Corp. v. Henry,* 416 S.W.2d 390 (Tex.1967). The no duty rule was succinctly summarized in *Halepeska v. Callihan Interests, Inc.,* 371 S.W.2d 368 (Tex.1963):

> The "no duty" doctrine is this: the occupier of land or premises is required to keep his land or premises in a reasonably safe condition for his invitees. This includes a duty of the occupier to inspect and to discover dangerous conditions. . . . His duty is to protect his invitees from dangers from which he, the occupier, knows, or (because of his duty to inspect) of which he *should* know in the exercise of ordinary care. If there are dangers which are not open and obvious, he is under a *duty* to take such precautions as a reasonably prudent person would take to protect his invitees therefrom or to warn them thereof. But if there are open and obvious dangers of which the invitees know, or of which they

are charged with knowledge, then the occupier owes them "no duty" to warn or to protect the invitees. This is so, the cases say, because there is "no duty" to warn a person of things he already knows, or of dangerous conditions or activities which are so open and obvious that as a matter of law he will be charged with knowledge and appreciation thereof. . . .

*Id.* at 378 (emphasis in original).

As the no duty rule operated, the court determined as a matter of law whether a condition was open and obvious. *Adam Dante, supra,* 483 S.W.2d at 459. Since an invitee is charged with knowledge and full appreciation of an open and obvious danger, the court's holding that a condition was open and obvious relieved the defendant of any duty (and any liability) to the plaintiff. *See generally McKee v. Patterson,* 153 Tex. 517, 271 S.W.2d 391 (1954). In this case the trial court found the condition open and obvious and directed a verdict for Huber. Downs appealed.

During the pendency of the appeal the Texas Supreme Court abolished the no duty rule in land occupier cases. *See Parker v. Highland Park, Inc.,* 565 S.W.2d 512 (Tex.1978). *Parker* held that a plaintiff's conduct in encountering an open and obvious condition would be judged under the reasonable person standard of negligence law.[2] *Id.* at 517. If *Parker* is applied retroactively the trial court's directed verdict cannot stand. Under the prior law, once the judge found that the condition was open and obvious a directed verdict was proper because the no duty rule operated as a bar to liability. Under *Parker,* a finding that a condition was so open and obvious that the plaintiff was charged with knowledge of it must nevertheless be followed by a consideration of whether the plaintiff acted negligently in encountering the risk. Both parties admit that in granting the

---

1. Tex.Rev.Civ.Stat.Ann. arts. 4671–4677.

2. Comparative negligence applies to cases tried after the adoption of the comparative negligence statute in 1973. *See* Tex.Rev.Civ.Stat. Ann. art. 2212a.

directed verdict the district court did not make a finding whether Downs acted negligently.

Huber argues that *Parker* has only prospective application and thus leaves the trial judge's verdict intact. Huber bases its argument on the language in *Parker* that abolished the no duty rule.

> We now expressly abolish the so-called no-duty concept in this case and, as expressed in *Farley* [*Farley v. M M Cattle Co.,* 529 S.W.2d 751 (Tex.1975)] "henceforth in the trial of all actions based on negligence . . ." The reasonableness of an actor's conduct under the circumstances will be determined under principles of contributory negligence.

565 S.W.2d at 517. The court clearly intended by its holding to establish negligence as the standard for future trials of land occupier cases. The quoted language says nothing, however, about the application of *Parker* to cases already tried and pending on appeal. From the court's silence we conclude that *Parker* did not decide the issue of its own retroactivity.[3] Our conclusion is buttressed by the fact that the Texas Supreme Court has in the past avoided retroactive application of a decision by giving advance warning that a doctrine was about to be overruled in the next case presenting that issue. *See Watkins v. Southcrest Baptist Church,* 399 S.W.2d 530 (Tex.1966) (charitable immunity). Had the Texas court intended only prospective application for *Parker* we believe this intention would have been made explicit.

As a federal court exercising diversity jurisdiction, we apply the law of the state as interpreted by the state's highest court.

*Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under garden variety application of *Erie* principles, where an explicit state court precedent is absent, as here, the federal court must ascertain and apply state law as the state court would if faced with a similar case. *See* C. Wright, *Law of Federal Courts* § 58 (3d ed. 1976). Thus, a classical *Erie* analysis would determine from all sources of Texas law whether the Texas Supreme Court would give retroactive application to *Parker.* The federal court would then give *Parker* whatever effect it would be given in state court.

Three years after *Erie,* however, the Supreme Court considered in *Vandenbark v. Owens-Illinois Glass Co.,* 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941), the effect of a change in state law between the time of the federal trial and appeal. The Court held that the federal appellate court must apply the state law as of the time of appeal and thus give effect to the intervening state court decision. *Cf. U. S. v. Schooner Peggy,* 1 Cranch (5 U.S.) 103, 110, 2 L.Ed. 49, 51 (1801). Federal courts have consistently followed the bright-line *Vandenbark* rule[4] even if it achieves the anomalous result of giving a state court decision retroactive effect in federal court when the decision would be given only prospective application in the state's own courts. 1A J. Moore, *Federal Practice* ¶ 0.307(3), p. 3319.

In this case, application of the *Vandenbark* rule and an *Erie* analysis tied to the probable result in state court produce the same result, for we believe that the Texas Supreme Court would apply *Parker* to state cases tried and pending appeal when *Parker* was decided,[5] *Parker* did not spring full-

---

**3.** Huber cites numerous cases for the proposition that changes in Texas law are generally considered to be prospective. *See, e. g., Coastal Industrial Water Authority v. Trinity Portland Cement Co.,* 563 S.W.2d 916 (Tex.1978); *Manley v. Sammons Enterprises, Inc.,* 563 S.W.2d 919 (Tex.1978). These cases concern the retroactivity of statutory changes rather than changes through case law. We do not consider the policy on statutory retroactivity to control our decision.

**4.** *See, e. g., Huddleston v. Dwyer,* 322 U.S. 232, 64 S.Ct. 1015, 88 L.Ed. 1246 (1944); *Nelson v.*

*Brunswick Corp.,* 503 F.2d 376 (CA9, 1974); *Commerce Oil Ref. Corp. v. Miner,* 303 F.2d 125 (CA1, 1962); *Williams v. Singer Co.,* 457 F.2d 799 (CA6, 1972).

**5.** Professor Moore argues that *Vandenbark* should not be applied reflexively. Rather, federal courts should ascertain not only current state law but also the effect the state court would give an intervening change in law. *See* 1A J. Moore, *supra,* ¶ 0.307[3], p. 3319. At least one federal appellate court has held that *Vandenbark* does not permit the federal court to go beyond ascertaining current state law to

grown and unannounced upon Texas negligence law. Rather the decision is but one of several reformations of Texas' tort law to meet the more flexible comparative negligence system. Prior to adopting comparative negligence, Texas applied several harsh defensive doctrines relating to plaintiff's conduct—*volenti non fit injuria* (assumption of the risk), discovered peril, and the *no duty* rule—that operated as complete bars to a plaintiff's recovery. The Texas Supreme Court has methodically discarded these doctrines as inconsistent with comparative negligence.

*Farley v. M M Cattle Co.,* 529 S.W.2d 751 (Tex.1975), abolished *volenti non fit injuria,* or voluntary assumption of the risk, as a complete defense. The court had foreshadowed *Farley* in *Rosas v. Buddies Food Store,* 518 S.W.2d 534 (Tex.1975). In *Parker,* the court applied the holding of *Farley* to the no duty doctrine, holding that *volenti* and no duty were functionally equivalent doctrines and that *no duty could not survive Farley.*

> This court, based on logic, has already undermined the no-duty rule that the court in *McKee* [*v. Patterson,* 153 Tex. 517, 271 S.W.2d 391 (1954)] felt bound by stare decisis to follow. Our decision in 1975 in *Farley* . . . abolished the voluntary assumption of risk doctrine in its entirety. . . . [Assumed risk] included three elements: (1) knowledge, (2) appreciation, (3) the voluntary encounter. . . . When *Farley* abolished voluntary assumption of risk, it terminated the whole doctrine, all three ele-

ments. The contention now is that the first and second elements (knowledge and appreciation by the plaintiff) in some way survived *Farley* and *Rosas* . . . and still live under the name of "no duty." Voluntary assumption of risk included and is inseparable from no-duty. Our decision in *Farley* was that the three factors which comprise the doctrine of voluntary assumption of risk (including the plaintiff's knowledge and appreciation) should be measured by the reasonableness of the actor's conduct. In other words, we held that the action should be decided upon principles of negligence.

*Parker, supra,* 565 S.W.2d at 517–18.

As we interpret this passage from *Parker,* the Texas court considered *Farley* to have completely undercut the basis of the no duty doctrine and to have instituted negligence principles as the basis for the trial of premises liability cases. *See id.,* at 519–20 and cases there cited. Thus *Parker* only made explicit the implied holding of *Farley* that no duty principles no longer controlled land occupier cases.[6] We conclude, therefore, that the Texas Supreme Court would apply *Parker* retroactively to cases tried after *Farley.*[7]

■■ Huber urges that the directed verdict was appropriate even if *Parker* is applied retroactively to require decision of this case under negligence principles. Negligence is a question of fact to be determined by the jury. The district judge made no findings as to the sufficiency of plaintiffs' evidence to support a negligence ver-

---

determine whether the state court would treat its own decision as having retroactive effect. *See Nelson v. Brunswick Corp., supra,* 503 F.2d at 381 & n.12. Since Professor Moore advocates essentially an application of *Erie* principles to the retroactivity question, the result we reach would be the same under either the flexible Moore approach or the strict *Vandenbark* holding.

6. Dicta in *Abalos v. Oil Development Co. of Texas,* 544 S.W.2d 627 (Tex.1976), seem to indicate that Farley did not vitiate the no duty doctrine. The court's explicit holding in *Parker* renders the *Abalos* dicta nugatory, however.

7. In *Bullington v. Texas Elec. Serv. Co.,* 570 F.2d 1272 (CA5, 1978), a panel of this court reversed a summary judgment for a defendant who had asserted the no duty doctrine as a defense. The panel applied *Parker,* which had been handed down between trial and appeal, and held that because *Parker* required the plaintiff's conduct to be judged under negligence principles a genuine issue of material fact existed. The *Bullington* panel applied federal law to impliedly hold *Parker* retroactive. *See* 570 F.2d at 1276 n.4. Our consideration of both state and federal law leads us to the same result as reached by the *Bullington* panel.

dict. In reviewing a directed verdict the appellate court is limited to deciding whether the trial court properly substituted its judgment for the jury's. *See, e. g., U. S. v. Terrey,* 554 F.2d 685 (CA5, 1977). In this case neither the trial court nor the jury made a negligence finding. It would be inappropriate for this court to make such a finding. *Cf. Bullington v. Texas Elec. Serv. Co., supra,* n.7.

REVERSED and REMANDED.