In re SIOUX, LTD., SECURITIES LITIGATION, Plaintiff–Appellee,

v.

COOPERS & LYBRAND, Defendant–Appellant.

FIRST SMALL BUSINESS INVEST-MENT CO. OF CALIFORNIA, et al., Plaintiffs–Appellees,

v.

BUTLER, BINION, RICE & KNAPP, et al., Defendants,

Coopers & Lybrand, Defendant–Appellant.

REPUBLIC VENTURE GROUP, INC., Plaintiff–Appellee,

v.

BUTLER, BINION, RICE & KNAPP, et al., Defendants,

Coopers & Lybrand, Defendant–Appellant.

Nos. 87–6167, 88–6195.

United States Court of Appeals, Fifth Circuit.

Sept. 20, 1990.

**62**

Andrew C. Hall, Richard F. O'Brien, III, Hall Poller & O'Brien, Miami, Fla., for plaintiffs-appellees.

Jay Kelly Wright, Steven W. Pelak, Arnold & Porter, Washington, D.C., Allister M. Waldrop, Jeffrey R. Elkin, Baker & Botts, Houston, Tex., Joseph A. Clark, III, Associate Gen. Counsel, Coopers & Lybrand, New York City, for defendant-appellant.

## ON PETITION FOR REHEARING

Before DAVIS and GARZA, Circuit Judges.[1]

W. EUGENE DAVIS, Circuit Judge:

Plaintiffs seek rehearing from our holding that their lawsuit is time-barred under the Texas statute of limitations. *See Sioux Ltd., Sec. Litig. v. Coopers & Lybrand,* 901 F.2d 51 (5th Cir.1990). While the case was on appeal, the Texas Supreme Court ruled that the 1979 legislative revisions to the Texas limitations statute lengthened the limitations period for common law fraud claims from two years to four years. See *Williams v. Khalaf,* 1990 WL 33531, (Tex. Mar. 28, 1990). In light of *Williams,* plaintiffs' petition for rehearing is GRANTED. We withdraw the previous panel opinion and substitute the following opinion in its place:

### I.

On March 27, 1981, the plaintiffs—four venture capital organizations—invested $5.6 million in the Rapada Corporation, an independent oil and gas exploration and production company. At that time, two of Rapada's shareholders and two of its operating subsidiaries were being sued for securities and common law fraud by Lee Ratner and other sellers of oil and gas leases ("the Ratner litigation"). Rapada described the Ratner litigation in Footnote 8 of its October 31, 1980 financial statements and declared that "based upon such investigation as has been completed at the present time, management and legal counsel are of the opinion that it is more likely than not that the Plaintiffs will not recover under any of their claims for damages and that the Plaintiffs will not recover under their claims for recission and ownership."

Coopers & Lybrand gave an unqualified audit report on those financial statements, and the plaintiffs relied on that report in making their investment. The plaintiffs also independently investigated the pending litigation and retained a Dallas law firm to further investigate it. In April 1982, however, a jury in the Ratner litigation returned a $13 million verdict against Rapada. This court later reversed the judgment entered on that verdict in *Ratner v. Sioux Natural Gas Corp.,* 770 F.2d 512 (5th Cir.1985). In the meantime, however, Rapada had filed for protection under the

---

1. Judge Gee participated in the original panel decision in this case, but he has recused himself from further involvement. We decide the case, therefore, as a quorum of the panel that heard oral argument.

federal bankruptcy laws and eventually entered liquidation. The jury apparently accepted plaintiffs' evidence that their stock was worthless.

The current litigation began in mid–1984. The plaintiffs sued several defendants alleging federal securities law fraud, common law fraud, and negligent misrepresentation in the plaintiffs' purchase of Rapada stock. All defendants except Coopers & Lybrand settled before trial.

At trial the .plaintiffs attacked several aspects of Rapada's financial statements, alleging that they: (1) inadequately disclosed the nature of Rapada's potential liability from the Ratner litigation; (2) did not disclose Rapada's liability to Ratner; (3) overstated Rapada's accounts receivable; (4) inflated Rapada's oil and gas reserves; and (5) incorrectly calculated depreciation, depletion, and amortization on Rapada's oil and gas reserves. The plaintiffs argued that Coopers & Lybrand did not disclose those deficiencies in its audit report. The plaintiffs contended that they relied on that unqualified audit to their detriment in deciding to buy Rapada stock. Following trial, a jury returned a verdict for the plaintiffs for about $5 million in compensatory damages but did not award punitive damages. Coopers & Lybrand appealed on several grounds and prevailed when this court held that the Texas statute of limitations barred the plaintiffs' lawsuits.

We conclude that the plaintiffs filed their claims for federal securities fraud and common law fraud within the four-year statutory period established by *Williams.* Negligent misrepresentation actions, however, are subject to a two-year statute of limitations; therefore, this cause of action is time-barred. We conclude further that the record evidence does not support the inference that Coopers & Lybrand committed material misrepresentations with respect to one aspect of Rapada's financial statements attacked by the plaintiffs. We va-

cate the judgment of the district court and remand for a partial new trial.

## II.

### A.

In their petition for rehearing, the plaintiffs argue based on *Williams* that a four-year statute of limitations applies to claims of federal securities law fraud, common law fraud, and negligent misrepresentation. We agree that *Williams* requires application of a four-year limitations period to actions for common law fraud and federal securities law fraud. But *Williams* does not govern claims of negligent misrepresentation, which is subject to a two-year statute of limitations.

In interpreting questions of state law, "Federal Courts ... in this Circuit are obliged to apply the latest and most authoritative expression of state law applicable to the facts of a case." *Lemarque v. Massachusetts Indem. & Life Ins. Co.,* 794 F.2d 194, 196 (5th Cir.1986). If substantive state law changes between the time of a federal trial and appeal, federal appellate courts must apply the state law as of the time of the appeal to give effect to the intervening state court decision. *See Huddleston v. Dwyer,* 322 U.S. 232, 236, 64 S.Ct. 1015, 1017, 88 L.Ed. 1246 (1944); *Downs v. J.M. Huber Corp.,* 580 F.2d 794, 796 (5th Cir.1978).

In *Williams,* the Texas Supreme Court held, "1979 amendments to the limitations statutes ... make the limitation period for fraud four years."[2] The Texas Code does not limit expressly the period for filing actions based on common law fraud, but the Texas Supreme Court has long held that claims of common law fraud are actions on a debt under the statute of limitations. *See Gordon v. Rhodes & Daniel,* 102 Tex. 300, 301–02, 116 S.W. 40, 41 (1909). Before 1979, the Texas Code contained two limitations statutes that specifically applied to actions on a debt. The

---

**2.** A motion for rehearing is pending in *Williams,* but that motion does not destroy the
finality of the judgment. We look to Williams

two-year statute[3] applied to actions in which the indebtedness was not evidenced by writing. The four-year statute[4] applied to actions in which the indebtedness was evidenced by or founded on a contract in writing. Because fraud, for limitations purposes, was treated as a debt not evidenced by writing, the Texas courts routinely applied the two-year limitation. *See Quinn v. Press*, 135 Tex. 60, 64, 140 S.W.2d 438, 440 (1940).

In 1979, the Texas legislature amended the two statutes governing timeliness of actions on a debt to eliminate the distinction between debts evidenced by a writing and other debts. Now, the four-year limitations statute governs all actions for debt. The *Williams* court concluded that this legislative revision reflected the legislature's intent to change the statute of limitations for common law fraud to four years. Three Texas appellate courts subsequently have interpreted *Williams* to allow a four-year limitations period for all fraud actions. *See Lesbrookton, Inc. v. Jackson*, 796 S.W.2d 276 (Tex.App.1990); *Vance v. Bell*, 1990 WL 112521 (Tex.App. Aug. 8, 1990); *Whitaker v. Huffaker*, 790 S.W.2d 761 (Tex.App.1990).

The 1934 Securities and Exchange Act sets no limitations period for Rule 10b–5 actions. This court has applied the limitations period for Texas fraud actions to Rule 10b–5 actions arising in Texas. *See Wood v. Combustion Eng'g, Inc.*, 643 F.2d 339, 342 (5th Cir.1981). Since *Williams*, the United States District Court for the Northern District of Texas has applied a four-year limitations period to Rule 10b–5 actions. *Longden v. Sunderman*, 737 F.Supp. 968, 971–72 (N.D.Tex.1990). We likewise apply the four-year limitations period to the Rule 10b–5 action in this case.

Texas courts have subjected negligent misrepresentation actions to the two-year statute of limitations. *Coleman v. Rotana, Inc.*, 778 S.W.2d 867, 873 (Tex. App.1989); *Cook Consultants, Inc. v. Larson*, 677 S.W.2d 718, 721 (Tex.App.1984), *rev'd on other grounds*, 690 S.W.2d 567 (Tex.1985), *on remand*, 700 S.W.2d 231, 237 (Tex.App.1985). The plaintiffs argue, based on *Williams*, that the four-year general limitations statute governs claims of negligent misrepresentation because the Texas Code contains "no express limitations period" for negligent misrepresentation. *See* Tex.Civ.Prac. & Rem.Code Ann. § 16.051 (Vernon 1986). This argument lacks merit. *Williams* addresses the limitations period only for fraud claims. It has no application to a claim of negligent misrepresentation. And the Texas courts have consistently held that the limitations period for negligent misrepresentation is two years, even though Texas has long had a general limitations statute providing four-year limitations periods for unenumerated claims.[5]

In our previous panel opinion, this court concluded that the "statute of limitations began to run on April 19, 1982 ... or shortly thereafter." 901 F.2d at 53. Because the plaintiffs filed their lawsuits in mid–1984, they met the statutory deadline for their common law fraud and federal securities law fraud actions. Their claims of negligent misrepresentation, however, are time barred.

## B.

Both common law fraud and federal securities law fraud depend on the existence of a material misrepresentation. At trial the plaintiffs argued that Coopers & Lybrand's audit report contained numerous misrepresentations. In a special verdict, a jury found that the audit report contained

---

as authoritative unless and until it is withdrawn by the Texas Supreme Court.

**3.** Formerly article 5526 of the Revised Civil Statutes and now codified in its amended form as § 16.003 of the Civil Practice and Remedies Code.

**4.** Formerly article 5527 of the Revised Civil Statutes and now codified in its amended form as § 16.004 of the Civil Practice and Remedies Code.

**5.** Before § 16.051, article 5529 of the Revised Civil Statutes allowed four years for "[e]very action ... for which no limitation is otherwise prescribed."

false statements or omissions of fact. But the verdict did not distinguish among the alleged misrepresentations. Thus we cannot discern whether the jury based its verdict on all alleged misrepresentations or only on one. And "[w]here we cannot determine whether or not the jury based its verdict on non-actionable allegations of omissions or misrepresentations, it is familiar law that we must reverse." *Ward v. Succession of Freeman*, 854 F.2d 780, 790 (5th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 2064, 104 L.Ed.2d 629 (1989). We therefore turn to Coopers & Lybrand's argument that its audit report, as a matter of law, did not materially misrepresent some of the items the court submitted to the jury as potential material misrepresentations.

■ Coopers & Lybrand audited financial statements prepared by Rapada. In its unqualified audit report, Coopers & Lybrand stated that their audit of Rapada's financial statements complied with generally accepted auditing standards (GAAS) and that those statements conformed to generally accepted accounting principles (GAAP). Plaintiffs complained of Coopers & Lybrand's failure to qualify or amplify in its audit the Rapada accountant's description of the Ratner litigation in Rapada's financial statements. Footnote 8 of the Rapada financial statements contained the passages that are the source of plaintiff's complaints:

> The company and two of its shareholders are named as defendants in a civil action suit. The essence of the suit is a claim for damages relating to amounts alleged to be due by virtue of a retained net profits interest in certain properties. The lawsuit makes the claim pursuant to allegations that the defendants violated federal and state securities laws.
>
> \*   \*   \*   \*   \*   \*
>
> [B]ased upon such investigation as has been completed at the present time, management and legal counsel are of the opinion that it is more likely than not that the Plaintiffs will not recover under any of their claims for damages and that the Plaintiffs will not recover under their claims for recission and ownership.

According to the plaintiffs' accounting expert, the audit report was misleading because it asserted that the financial statements follow GAAP even though footnote 8 does not mention the word "fraud." The plaintiffs argue that the omission of any reference to "fraud" in the description of the Ratner litigation was material even though footnote 8 disclosed the fact that the company and two of its shareholders had been accused of "violat[ing] federal and state securities laws."

The Supreme Court enunciated the following standard of materiality for claims under SEC Rule 14a–9, issued pursuant to § 14(a) of the Securities Exchange Act of 1934: "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). More recently, the Court adopted that standard for claims under Rule 10b–5. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 232, 108 S.Ct. 978, 983, 99 L.Ed.2d 194 (1988). *See also Isquith ex rel. Isquith v. Middle South*, 847 F.2d 186, 207–08 (5th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). Texas courts have adopted a more stringent standard to evaluate whether a misrepresentation is material in a common law fraud action. *See Adickes v. Andreoli*, 600 S.W.2d 939, 946 (Tex.Civ.App.1980) ("The test of materiality to be applied in an action for fraud is whether the contract would have been signed by the plaintiff without such misrepresentations having been made.").

Because materiality is a mixed question of law and fact, it is ordinarily left to a jury. "Only if the established omissions are 'so obviously important to an investor, that reasonable minds cannot differ on the question of materiality' is the ultimate issue of materiality appropriately resolved 'as a matter of law' by summary judgment." *TSC Indus.*, 426 U.S. at 450, 96 S.Ct. at 2133, *quoting Johns Hopkins Univ. v. Hutton*, 422 F.2d 1124, 1129 (4th Cir.1970). *See also Isquith*, 847 F.2d at 208. To gauge materiality, therefore, we

must determine whether a reasonable jury could conclude on this record that a reasonable investor would have considered the addition of the word "fraud" in the audit important in evaluating the risk Rapada faced from the Ratner lawsuit.

In describing the nature of the Ratner litigation, footnote 8 uses the general terms "violat[ions of] federal and state securities laws" to include the more specific claims of fraud. Plaintiffs do not suggest how the addition of "fraud" to footnote 8 would have helped them evaluate Rapada's risk from the Ratner litigation. Although our task is to determine whether footnote 8 would have put a reasonable investor on notice of Rapada's financial risk from the litigation, we cannot overlook how plaintiffs themselves reacted to this warning: they hired a lawyer to investigate. We conclude that a reasonable jury could not find that adding the word "fraud" to footnote 8 would assist a reasonably prudent investor in assessing the financial risk Rapada faced from the Ratner litigation.

■ Coopers & Lybrand contends that three other alleged misrepresentations were improperly presented to the jury. Coopers & Lybrand argues: (1) that the auditors followed GAAS even though the audit report failed to mention that the Ratner litigation was subject to material uncertainty; (2) that the financial statements followed GAAP even though they did not disclose the range of estimated loss from the Ratner litigation; and (3) that the financial statements followed GAAP even though they did not disclose a $1 million liability to Ratner for the interest in the net profits from certain mineral leaseholds sold by Ratner to Rapada's corporate predecessor. We have considered Coopers & Lybrand's arguments with respect to each of these alleged misrepresentations. We conclude that each presented questions properly submitted to the jury.

In summary, we vacate the judgment and remand this case for retrial on plaintiff's federal securities law and state law fraud claims and on the compensatory damages that flow from liability on such claims. Plaintiff's negligent misrepresentation claims are time barred and may not be retried. Punitive damages were denied in the first trial and need not be retried.

For the foregoing reasons, we VACATE the judgment of the district court and REMAND for a partial new trial consistent with this opinion.