James H. HANLEY, et al., Plaintiffs,

v.

**FIRST INVESTORS CORPORATION**
**and John Marceaux, Defendants.**

Civ. A. No. 1:90cv848.

United States District Court,
E.D. Texas,
Beaumont Division.

March 30, 1992.

Jeff Robert Branick, Scot E. Sheldon, Provost, Sheldon, Steel, Hughes, Port Arthur, Tex., J. Hoke Peacock II, Keith Kebodeaux, Orgain, Bell & Tucker, Beaumont, Tex., for plaintiffs.

Tom Hanna, Mehaffy & Weber, Beaumont, Tex., Stephen W. Grafman, Kirkpatrick & Lockhart, Washington, D.C., Paul D.

Smith, Grace Surguy, Axelrod, Smith, Komiss & Kirshbaum, Houston, Tex., for defendants.

## MEMORANDUM OPINION

COBB, District Judge.

Defendant's motion for summary judgment is before the court. Defendants present two grounds for their motion. First, defendants assert that the applicable statutes of limitation bar plaintiffs claims. Second, defendants claim that the plaintiff does not present claims for cognizable damages.

### FACTS

This lawsuit is an action by nineteen persons who purchased shares in various mutual funds against First Investors Corporation and John Marceaux. Plaintiffs made their investments between 1984 and 1987.[1] First Investors is a national firm which sponsors and administers mutual funds. John Marceaux was a broker in the Houston and Beaumont offices of First Investors between 1982 and 1988.

Some of the funds plaintiffs invested in were funds that invested in "high yield" or "junk" bonds. Plaintiffs claim that they relied on John Marceaux's statements to them that their investments would earn a high rate of return and were guaranteed and safe. According to plaintiffs, Marceaux analogized the investments to certificates of deposit at a bank, which would earn income while the principal would remain secure. Their investments subsequently fell in value. Plaintiffs filed this suit on September 27, 1990. Plaintiffs seek actual and exemplary damages under theories of common law fraud, Rule 10b–5 of the Securities Exchange Act of 1934, the Texas Securities Act, breach of fiduciary duty, and negligence.

Defendants claim that plaintiffs were on notice that the funds invested in "high-yield" or "high-risk" securities. At the

---

1. Some of these plaintiffs' dividends were automatically reinvested in mutual fund shares, raising the possibility of multiple starting dates for the limitations period for a single plaintiff. For purposes of the statute of limitations, the parties stipulated at oral argument that each reinvestment would not commence a new cause of action with a potentially new limitations period.

time they purchased their mutual fund shares, sixteen of the nineteen signed acknowledgements stating that they had received prospectuses. The first page of the prospectuses of the various funds disclosed in plain language that these were high risk investments which were not suitable for risk averse investors. Contrary to the assertion of the defendants and the signed acknowledgments, each of the plaintiffs avers that he or she did not receive a prospectus.

Local newspapers carried listings of the current price per share of these mutual funds. The plaintiffs received monthly statements apprising them of the current price per share and number of shares currently held. Multiplying the current price per share by the number of shares currently owned gives the value of an investment in one of the funds. Comparison of this figure with the computed value from prior months would reveal whether the value of the investment changed from month to month.

## STATUTES OF LIMITATION

■ Under the Texas Security Act the limitations period is three years from discovery but within five years of initial purchase. Tex.Rev.Civ.Stat.Ann. art. 581–33 H(2)(a) and (b) (Vernon Supp.1991). Accordingly, the statute of limitations bars the Texas Security Act claims of all plaintiffs who invested before September 27, 1985. The Texas Security Act claims of plaintiffs Flores, Hanley, and Silva are subject to a three year statute of limitations running from the time they discovered or should have discovered the misrepresentations in the exercise of reasonable diligence. *See id.*

■ The Texas two-year statute of limitations for torts governs claims for breach of fiduciary duty and negligence. Tex.Civ.Prac. & Rem.Code Ann. § 16.003(a)

(Vernon 1986); *El Paso Assoc. v. J.R. Thurman & Co.*, 786 S.W.2d 17, 20 (Tex. App.—El Paso 1990 no writ); see also *Sioux, Ltd. v. Coopers & Lybrand*, 914 F.2d 61, 64 (5th Cir.1990). The limitation period for the claims under Rule 10b–5 and common law fraud is four years. *Sioux, Ltd.*, 914 F.2d at 64 [2]; *Williams v. Khalaf*, 802 S.W.2d 651, 658 (Tex.1990).

Essentially the same discovery rule governs the running of the statute of limitations for all of these causes of action. *Compare Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir.1988) (for 10b–5, period runs from time of knowledge of the violation or notice of facts which in the exercise of due diligence would have led to actual knowledge thereof) *with Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988) (for common law fraud, period runs from the time when the fraud was perpetrated, or if the fraud has been concealed, from the time it was discovered or could have been discovered by exercise of reasonable diligence) *and El Paso Assoc.*, 786 S.W.2d at 20 (for breach of fiduciary duty and negligence, claims run from the time the tort was discovered or could have been discovered in the exercise of reasonable diligence).

■ To merit summary judgment, the movant must demonstrate that any issues raised by the non-movant are either immaterial, and thus unnecessary to the disposition of the case, or not genuine, and thus so one-sided that there can be but one reasonable conclusion as to the verdict. Fed.R.Civ.P. 56(c); *Professional Managers, Inc. v. Fawer Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir.1986). On motion for summary judgment on the discovery rule, knowledge of the underlying cause of action cannot be imputed to a plaintiff except in the unusual case where a court can determine as a matter of law that a reasonable trier of fact could not fail to

2. Although the Supreme Court imposed a uniform federal limitations period in 10b–5 cases, *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, — U.S. —, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (within one year of discovery but only up to three years from initial purchase), Congress limited the retroactive effect of the *Lampf* decision. 15 U.S.C. 78aa–1(a)

(1992) (actions commenced before June 19, 1991, governed by limitations period then in effect). Before June 19, 1991, Fifth Circuit precedent applied the four-year Texas limitation period for fraud in 10b–5 cases. *See Sioux, Ltd. v. Coopers & Lybrand*, 914 F.2d 61, 64 (5th Cir.1990).

find that the investors either actually knew the information or should have discovered it in the exercise of reasonable diligence. *Luksch v. Latham,* 675 F.Supp. 1198, 1199 (N.D.Cal.1987); *see also Kuwait Airways Corp. v. American Sec. Bank,* 890 F.2d 456, 463 n. 11 (D.C.Cir.1989).

The summary judgment proof in this case does not rise to the level of certainty to require summary judgment. Defendant relies on three arguments that the plaintiffs knew or should have known of their causes of action before the running of the applicable limitations periods.

■ First, defendants argue that plaintiffs should have known of the alleged fraud at the outset because the language of the prospectuses contradicts the oral representations allegedly made by Marceaux. A plaintiff who reads a prospectus is on notice of fraud · when the written representations in offering materials contradict the oral representations made by a broker. *Landy v. Mitchell Petroleum Technology Corp.,* 734 F.Supp. 608, 617–18 (S.D.N.Y.1990); *see also Insurance Consultants of Am. v. Southeastern Ins.,* 746 F.Supp. 390, 406 (D.N.J.1990) (oral representations made prior to purchase of securities which directly contradict representations in offering memoranda place reasonable investor *who has read memoranda* on inquiry notice of federal securities fraud).

■ The issue here is whether a signed acknowledgement of receipt of a prospectus is sufficient as a matter of law to impute knowledge of the contents of the prospectus to an investor. Sixteen of the nineteen plaintiffs acknowledged in writing that they received prospectuses at the time of sale. However, plaintiffs' affidavits assert that plaintiffs never received or were offered the prospectuses. Plaintiffs' signatures on the acknowledgements is not dispositive of the question of notice. *See Luksch,* 675 F.Supp. at 1201; *Washington v. Baenziger,* 673 F.Supp. 1478, 1485 (N.D.Cal.1987). This court is unable to determine from the summary judgment evidence whether the plaintiffs did or did not receive the prospectuses.

■ Second, defendants argue that knowledge that the investments were unsafe should be imputed to plaintiffs because the net asset value of the investments fluctuated during the period before September 27, 1986.

As a threshold matter, however, plaintiffs may not necessarily be imputed with knowledge of the fluctuations in value. Defendants assert that plaintiffs were on notice of the fluctuations because plaintiffs could have calculated the value of their investments from information in the monthly statements. To compute the value of the investments from the statements, one takes the total shares owned and multiplies by the price per share. The figure obtained could be compared with the figures received by the same procedure from previous months to track variations in the value of the investment. Nowhere in the monthly statements is there a calculation of the investments overall value, nor is there information regarding the investment's value in past months. Defendants offer no authority holding that failure to compare the monthly results of these calculations should necessarily start the running of the statute of limitations. This court declines to rule that as a matter of law the plaintiffs should have known of the fluctuations from the face of the monthly statements.

■ Defendants further contend that plaintiffs should be imputed with knowledge of fluctuations in the value of their investments from the monthly listings of the prices per share of mutual funds in local newspapers. A calculation and comparison of the net asset value of the investment over time would have had to be performed using the number of shares revealed by the monthly statements. Defendants cite no authority for the proposition that knowledge of the contents of newspapers should be imputed to the plaintiffs. Courts are hesitant to impute knowledge of trade papers, public records, and registration statements to plaintiffs. *See Briskin v. Ernst & Ernst,* 589 F.2d 1363, 1367–68 (9th Cir.1978); *Corwin v. Marney, Orton Investments,* 843 F.2d 194, 198 (5th Cir.),

*cert. denied, VanCaspel v. Corwin,* 488 U.S. 924, 109 S.Ct. 305, 102 L.Ed.2d 324 (1988); *Rochelle v. Marine Midland Grace Trust Co.,* 535 F.2d 523, 531–33 (9th Cir. 1976).

More importantly, there is doubt that awareness of fluctuations in the value of their investments would place them on notice that their investments were unsafe. It is unclear that some variation in price per share should indicate that an investment is unsafe. Even investment-grade securities may vary significantly in price per share. The gravamen of plaintiffs' complaint is not that the defendants sold them securities which fluctuated in value, but rather that the defendants fraudulently misrepresented the risks associated with these securities. While there may be cases where the fluctuations are so dramatic that a reasonable investor who was aware of the fluctuations could be held to be on notice of fraud for purposes of the discovery rule, this is not so obvious a case. Accordingly, a genuine and material question for the jury remains.

■ Defendants' third argument is that the September, 1986 cut in dividends should have placed the plaintiffs on notice that their investments were unsafe. For the period ending September 30, 1986, the Fund for Income cut its dividend from 6.5 cents per share to 5.5 cents per share. The other funds experienced similar cuts. These dividends did not become payable until October 15, 1986; so any notice arising from this cut in dividends would be within the statutory window for the fraud and 10b–5 claims. Further, some of the plaintiffs' dividends were automatically reinvested. There is no summary judgment proof as to when these plaintiffs should have become aware that their dividend had been cut. For those plaintiffs who did receive dividend checks, this court is unwilling to rule as a matter of law that a reduction of a particular amount in monthly dividends would put a reasonable investor on notice that his or her entire investment was unsafe or that his or her initial investment was in peril.

Based on the foregoing analysis, this court concludes that there is a genuine and material question of fact as to when plaintiffs knew or should have known of the alleged fraud.

## DAMAGES

Defendants' second ground for summary judgment is that plaintiffs fail to claim cognizable damages. Defendants attack both measures of damages claimed by plaintiffs.

■ First, Defendants argue that plaintiffs cannot collect out-of-pocket damages for their 10b–5 claims. Out of pocket damages is usually the measure of damages in 10b–5 cases in the Fifth Circuit. *Huddleston v. Herman & MacLean,* 640 F.2d 534, 555–56 (5th Cir.1981), *aff'd in relevant part,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). Under the out-of-pocket measure of damages, the plaintiff is entitled to the difference between the price paid and the fair market value of the security at the time of the initial purchase. *Id.* at 556. Subsequent declines in value are not recoverable under the out-of-pocket theory. *See id.* Plaintiffs do not suggest that they paid more for the mutual fund shares than they were worth at the time of sale; rather, plaintiffs claim that defendants misled them as to the safety of these investments and that the investments later declined in value. Therefore, under the out-of-pocket theory, plaintiffs have no recoverable damages.

■ However, out-of-pocket damages are not the only measure of damages available in 10b–5 cases. *Abell v. Potomac Ins. Co.,* 858 F.2d 1104, 1137 (5th Cir.1988). A court may fashion an appropriate remedy if out-of-pocket damages are inadequate to redress a plaintiff's injury. *See id.*

■ Second, contrary to defendants' assertion, benefit of the bargain damages are available in a Texas common law action for securities fraud. *Leyendecker & Assoc., Inc. v. Wechter,* 683 S.W.2d 369 (Tex.1985) (fraud plaintiff can recover greater of "benefit of bargain" or "out of pocket" measure of damages, whichever is greater).

## CONCLUSION

Summary judgment as to the plaintiffs' claims under the Texas Security Act are GRANTED because they are time barred. Summary judgment as to 10b–5 violations, common law fraud, breach of fiduciary duty, and negligence is DENIED.